UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

**PEDRO CANELA-RODRIGUEZ,**

                    **Plaintiff,**

                                 **DECLARATION OF
                                 MARK J. WEINSTEIN, ESQ.**

- against -

                                 **INDEX NO. 09 CIV6588 (JSR)**

**MILBANK REAL ESTATE, and FRIEDA
RODRIGUEZ,**

                    **Defendants.**

-------------------------------------------------------------x

I, Mark J. Weinstein, affirm under penalty of perjury as follows:

1. I am of counsel to Cotto & Associates, the firm representing the Defendants in the above-entitled action.

2. This Declaration, the accompanying Memorandum of Law, and Rule 56.1 Statement, together with exhibits, is submitted in Support of Defendants' Summary Judgment Motion.

3. Attached hereto as Exhibit 1 are the relevant pages of the deposition transcript of the Plaintiff, Pedro Canela-Rodriguez, taken January 19, 2010.

4. Attached hereto as Exhibit 2 is a true and correct copy of an Affidavit of Ray Radparvar, employee of Defendants', dated February 15, 2010, with Exhibits A, B, C, D, E, and F, attached thereto.

5. Attached hereto as Exhibit 3 is Plaintiff's Verified Complaint.

6. Attached hereto as Exhibit 4 is Defendant's Answer with Affirmative Defenses.

Dated: Ossining, NY,
      February 15, 2010

Mark J. Weinstein

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**          **CASE NO. 09 CIV 6588**

**PEDRO CANELA-RODRIGUEZ, Plaintiff**

-against-

**MILBANK REAL ESTATE, and FRIEDA RODRIGUEZ, Defendants**

DECLARATION OF MARK J. WEINSTEIN, ESQ.

Cotto & Associates
70 Spring Street
Ossining, New York 10562
Phone (914) 941-4077
Fax (914) 941-4082

**Attorneys for Defendants**

# EXHIBIT 1

```
 1                    RODRIGUEZ

 2         Q.   Mr. Rodriguez, would it be fair

 3    to say that based on your complaint, you

 4    started working on November 8, 2007?

 5         A.   What?

 6         Q.   Do you believe that you started

 7    to work there on November 8, 2007?

 8         A.   I don't understand.

 9              THE INTERPRETER:  Do you want me

10         to -- let me change the wording a

11         little, the dialect.

12              MR. COTTO:  Okay.  Translate it so

13         he can understand it.

14              (The interpreter complied.)

15         Q.   The complaint that your attorney

16    filed and served against my client indicates

17    the date, a start date for employment at

18    Milbank as November 8, 2007.

19              My question to you is, is that

20    the correct date that you commenced

21    employment at Milbank?

22         A.   More or less. I don't remember

23    well.

24         Q.   Who referred you to work at

25    Milbank?
```

```
 1                    RODRIGUEZ
 2   know what you're asking me.
 3             MR. COTTO: I'm going to have this
 4        marked as Defendants' Exhibit B.
 5        (A document entitled at-will employment
 6        relationship was marked as Defendants'
 7        Exhibit B for identification, as of this
 8        date.)
 9        Q.   I'm going to show you,
10   Mr. Canela Rodriguez, what's been marked as
11   Defendants' Exhibit B.
12             Is that your signature at the
13   bottom (indicating)?
14        A.   Yes.
15        Q.   Once again, do you know what
16   that document is?
17        A.   No, I don't know.
18        Q.   Before signing this document,
19   did Eric or anyone explain it?
20        A.   No.
21        Q.   Nobody explain to you what that
22   document is?
23        A.   No. Nobody explain.
24        Q.   Once again, by the way, do you
25   recall signing this document?  It's dated
```

```
1                        RODRIGUEZ
2     November 24, 2008.
3          A.      Yes. Yes, I remember. That's my
4     signature, but I don't understand. I don't
5     know what it is.
6          Q.      Do you recall who gave you this
7     document?
8          A.      I think Roy gave it to me.
9          Q.      Roy?
10         A.      Yes. Something like that.
11         Q.      Was it Eric or Frieda Rodriguez
12    who may have given it to you?
13         A.      No.
14         Q.      I'm just going to read what this
15    document states and that you signed.
16                 At the top it says at-will
17    employment relationship.
18                 MR. AVSHALUMOV:  Again, same
19         objection. These documents haven't been
20         properly admitted, so any questions asked
21         based on this document I'll object to at
22         the time of trial.
23         Q.      Do you know what an at-will
24    employment relationship is?
25         A.      No.
```

```
 1                    RODRIGUEZ
 2              What you're telling me is that
 3    Eric indicated he was going to pay you $714
 4    every fifteen days; is that correct?
 5        A.    Yes.
 6        Q.    How many hours a week did Eric
 7    say you had to work for this amount of
 8    money?
 9        A.    I was working seven days.
10        Q.    Again, I'm sorry.
11              My question is what did Eric
12    tell you about how many hours per week you
13    were going to work for this amount of
14    money?
15        A.    Well, he told me I had to work a
16    normal job, five days the schedule was and
17    that I could start early in the morning,
18    eight o'clock a.m. until four or five in the
19    afternoon.
20        Q.    Did you sign anything with Eric
21    indicating that you were going to work these
22    hours, these days at this pay?
23        A.    No.
24        Q.    You indicated that Eric was
25    going to give you a porter to work under
```

DIAMOND REPORTING (718) 624-7200 info@diamondreporting.com

24

```
 1                     RODRIGUEZ
 2    time?
 3         A.    From eight to four or five
 4    o'clock in the afternoon.
 5         Q.    Okay.
 6         A.    If the boiler didn't work, you
 7    had to be there.
 8         Q.    Your normal working hours were
 9    from eight in the morning to either four or
10    five in the afternoon, correct?
11              MR. AVSHALUMOV:  Objection.
12         Objection to form. You're putting words
13         in his mouth. That's not normal working
14         hours.
15              MR. COTTO:  I'm asking if that was
16         the normal working hours that he was
17         informed that he had to work.
18              You can translate that.
19              (The interpreter complied.)
20         A.    What regular hours do you mean?
21         Q.    In your meeting with Eric before
22    you started to work there, he indicated to
23    you that your working hours were from eight
24    to four or five; is that correct?
25         A.    Yes.
```

```
 1                    RODRIGUEZ

 2      duties, the days and hours per week that you

 3      had to work?

 4           A.     It's only that we were going to

 5      work and they were going to pay me every

 6      fifteen days. That my work -- I was going

 7      to do work like a super and I was going to

 8      have a porter, but when Eric left, when Eric

 9      left, things changed.

10           Q.     You said that the pay would be

11      every fifteen days; is that correct?

12           A.     Yes.

13           Q.     What was the agreed upon pay

14      that Milbank was going to pay your salary?

15           A.     They told me they were going to

16      pay me every fifteen days and they were

17      going to give me 714. I was going to receive

18      a check and then I was working well with him

19      for three months and from there some other

20      people, some others after that and they

21      changed my job.

22           Q.     I'm just talking about the

23      meeting with Eric now. I'm not talking about

24      --  I'll ask you questions about the other

25      people you're referring to.
```

```
 1                        RODRIGUEZ

 2    your duties going to be?

 3         A.    Take care of what's necessary

 4    about the building, and in that building

 5    there was a lot of work, a lot of leaks. It

 6    was a lot of work. They were going to send

 7    me to work on these problems.

 8         Q.    What building did you work out

 9    of for Milbank?

10         A.    On both.

11         Q.    Can you give me the addresses of

12    both?

13         A.    2770 and 2780.

14         Q.    What's the full address?

15         A.    I gave it to him a while ago.

16         Q.    Oh, it's the same address?

17         A.    Yes.

18         Q.    Is that Kingsbridge Terrace?

19         A.    Yes.

20         Q.    And that was 2780?

21         A.    Yes.

22         Q.    So you were responsible for both

23    buildings?

24         A.    Yes.

25         Q.    And the porters that Eric
```

34

```
 1                       RODRIGUEZ
 2         Q.    So the record is clear, you
 3    worked and lived in the same building,
 4    correct?
 5         A.    2770 Kingsbridge in both of
 6    them, 2770 and 2780.
 7         Q.    But you lived at 2770
 8    Kingsbridge?
 9         A.    Yes. For a year I lived there.
10         Q.    Did you pay rent when you lived
11    there?
12         A.    No.
13         Q.    Why not?
14         A.    Because they didn't request for
15    me to pay rent. They never asked me to pay
16    rent. If I would have paid rent, it wouldn't
17    be enough.
18         Q.    Was that the agreement that you
19    made with Eric when you were hired to work?
20         A.    Yes.
21         Q.    Did you pay electricity for your
22    apartment unit?
23         A.    No.
24         Q.    The phone, did you pay for
25    that?
```

```
 1                     RODRIGUEZ
 2    mentioned that were going to be working with
 3    you, did they work in both buildings?
 4         A.    Yes, the same. They clean both.
 5         Q.    What were their jobs?  What did
 6    they do?
 7         A.    Clean.
 8         Q.    I guess broom clean and mop?
 9         A.    Yes. Mop, broom, take the
10    garbage out, clean the outside.
11         Q.    As a super, you had to make sure
12    that they did a good job; is that correct?
13         A.    Yes. Yes. I was always there.
14         Q.    So you were watching to make
15    sure they finished the job?
16         A.    Yes. That's what I was always
17    doing.
18         Q.    If they did a bad job, what
19    would you do?
20         A.    I would tell them to do it
21    again.
22         Q.    So you were supervising them,
23    making sure that they were doing a good
24    job?
25              MR. AVSHALUMOV:  Objection to the
```

```
 1                      RODRIGUEZ

 2           form of the question. It's being

 3           repetitive. It's been asked and answered

 4           already.

 5      Q.      You could answer.

 6              MR. AVSHALUMOV:  Go ahead.

 7              You can answer again.

 8      A.      He's repeating the same thing.

 9      Q.      So you were supervising these

10   porters to make sure they did their job

11   correctly?

12              MR. AVSHALUMOV:  The question was

13           asked and answered.

14              MR. COTTO:  Can he answer it

15           again?

16              MR. AVSHALUMOV:  Yes.

17      Q.      Is that correct, Mr. Rodriguez?

18      A.      Yes, it's correct.

19      Q.      Was there anyone else that you

20   supervised besides the porters?

21              MR. AVSHALUMOV:  Objection.

22      A.      I don't have time to supervise a

23   lot of people. I had a lot of work to do.

24      Q.      During the time that you worked

25   for Milbank, who was your immediate
```

DIAMOND REPORTING (718) 624-7200 info@diamondreporting.com

```
 1                    RODRIGUEZ
 2        A.    What was that?
 3        Q.    Were these rental units?
 4        A.    Yes. That's what it was,
 5   rentals.
 6              MR. COTTO:  Off the record.
 7                   (Whereupon, a discussion was
 8        held off the record.)
 9        Q.    Did both buildings have
10   elevators?
11        A.    Yes, but they never worked
12   because they didn't get them fixed.
13        Q.    As a super, did you have an
14   office in either building?
15        A.    Yes, where I used to put all my
16   papers.
17        Q.    Where was that office located?
18        A.    In the basement.
19        Q.    What would be in that office?
20   What would you have in there?
21        A.    The materials that they bring
22   me, the papers of the building, the work
23   orders they sent me, the rent. Everything
24   that I used to do. I used to always save it
25   there.
```

```
 1                    RODRIGUEZ
 2    your attorney, it indicated that you worked
 3    approximately 105 hours or more per week
 4    from the period of November 8, 2007 through
 5    January 5, 2009.
 6              Do you understand?  Do you agree
 7    with that statement?
 8        A.    Yes.
 9        Q.    Could you tell us the hours that
10    you worked overtime during the week during
11    the time period stated?
12        A.    No. I didn't do that. They made
13    that hour number. I don't know.
14        Q.    Who made what?  I don't
15    understand.
16        A.    I'm saying that I --  I didn't
17    do the count of the time. I don't know.
18              MR. AVSHALUMOV: He's asking you
19         what hours did you work.
20              THE WITNESS:  Like what?  Like
21         what hours?
22              MR. AVSHALUMOV:  Like how many
23         hours a week did you work. From when to
24         when did you work, how many days?
25              THE WITNESS:  I worked seven days.
```

```
 1                    RODRIGUEZ
 2          I worked there seven days. They said the
 3          work was twenty-four hours. That's what
 4          they said.
 5     Q.     My question is this.
 6              You testified earlier that you
 7     had a meeting with Eric and the job required
 8     that you work five days per week. Your
 9     complaint states that you worked 105 or more
10     hours per week.
11     A.     Yes, but the thing is, that was
12     when Eric worked. When Eric left, everything
13     went bad.
14     Q.     Okay.
15              When did you start working 105
16     hours or more per week with Milbank?
17     A.     After Eric left.
18     Q.     When was that?
19     A.     I don't have no idea because
20     Eric was only there three months.
21     Q.     So you started working there in
22     November of 2007. You indicated that Eric
23     was there for three months, so that would be
24     bring us to February.
25              Would it be fair to say that?
```

```
 1                    RODRIGUEZ

 2        A.    I don't know exactly if it was

 3   three months. It was more or less three

 4   months. He didn't stay there long.

 5        Q.    Did you start working overtime

 6   these hours starting in February of 2008 or

 7   March of 2008?

 8        A.    More or less I think, yes. I

 9   don't have an idea.

10        Q.    You never wrote it down,

11   correct?

12        A.    No. I didn't write anything.

13        Q.    You never wrote down the

14   overtime hours you allegedly worked,

15   correct?

16        A.    No, because Roy or Ms. Carmen,

17   they said they were going to give me a

18   bonus. They were going to give me something,

19   but they never gave me anything.

20        Q.    When did they tell you they were

21   going to give you a bonus?

22        A.    When they used to go there I

23   used to tell them that there was a lot of

24   work. No. No. Don't worry. We're going to

25   give you something.
```

```
 1                      RODRIGUEZ
 2    something. They were going to recognize some
 3    of my work. She told me to speak with them.
 4         Q.      And this was for overtime work
 5    that you were discussing with her?
 6         A.      Yes, for overtime.
 7         Q.      Did you ever present any proof
 8    in writing of these alleged hours that you
 9    worked overtime?
10         A.      No.
11         Q.      Did you ever present any written
12    proof in writing to Ray or Carmen of these
13    hours that you allegedly worked overtime?
14         A.      No, because they know. They
15    didn't tell me they were going to pay the
16    hours. They were going to pay me for the
17    work.
18         Q.      How did you calculate that you
19    worked from November 8, 2007 to January 5,
20    2009 a hundred and five or more hours per
21    week?
22         A.      Because I used to work from six
23    o'clock in the morning until about eleven or
24    twelve o'clock sometimes, some days. Some
25    days they would wake you up at four o'clock
```

50

```
 1                    RODRIGUEZ

 2          Q.    The hours that you worked prior

 3    to eight in the morning or after five in the

 4    evening, do you have any proof of that in

 5    writing of those hours that you worked and

 6    what you did in those hours?

 7          A.    No. I didn't do it.

 8          Q.    Once again, my question is, how,

 9    if you did not write your overtime hours

10    down, how did you arrive, how did you

11    calculate that you worked 105 hours or more

12    in a week?

13                MR. AVSHALUMOV:  Objection. Asked

14          and answered numerous times, but I'll let

15          him answer it again.

16          A.    I told you already.

17          Q.    I'm asking you to repeat it

18    again.

19          A.    You have it written down.

20          Q.    Mr. Rodriguez, I'm asking you

21    the question again.

22                MR. AVSHALUMOV:  Say it again.

23          A.    I used to start at six o'clock

24    in the morning. I always got up at six. At

25    six o'clock, I was out working because the
```

```
 1                       RODRIGUEZ
 2               MR. COTTO: Let's mark these.
 3          (Disciplinary counseling forms were
 4          marked as Defendants' Exhibits D for
 5          identification, as of this date.)
 6          Q.    I'm going to show you,
 7     Mr. Canela Rodriguez, what's been marked as
 8     Defendants' Exhibit D. These are a series of
 9     disciplinary counseling forms against you.
10     Review each one and answer whether you
11     recall receiving them.
12          A.    I don't have any of these
13     documents. I don't have any of these
14     documents.
15          Q.    You don't recognize any of these
16     documents?
17          A.    No. I don't have none of those
18     papers. They never gave me any of those. I
19     signed those for Roy, but he didn't give me
20     a copy or anything.
21          Q.    Do you recall receiving these
22     disciplinary counseling forms?
23          A.    He gave it to me to sign.
24          Q.    Did he speak to you about the
25     complaints from various tenants on these
```

```
 1                        RODRIGUEZ
 2      forms?
 3           A.     I didn't know anything about
 4      that. I never knew anything about that.
 5           Q.     So you signed something here
 6      that you didn't know about?  Is that what
 7      you're saying?
 8           A.     No. Those papers, I didn't know.
 9           Q.     You acknowledge your signature
10      on this form; is that correct?
11           A.     Yes.
12                  MR. AVSHALUMOV:  Which exhibit was
13           that?
14                  MR. COTTO:  Exhibit D, the
15           disciplinary counseling form. It's dated
16           10/30/08.
17                  Let's mark this.
18           (A document entitled employee information
19           was marked as Defendants' Exhibit E for
20           identification, as of this date.)
21           Q.     I'm going to show you,
22      Mr. Canela Rodriguez, what's been marked as
23      Defendants' Exhibit E.
24                  Do you recognize this document?
25           A.     No. No.
```

```
 1                    RODRIGUEZ
 2    individual at Milbank ever tell you about or
 3    complain about the quality of work that you
 4    did in tenants' apartments?
 5         A.    Nobody ever told me anything.
 6         Q.    Did you have meetings with
 7    Eric?  You indicated there was a Ray or a
 8    Carmen in those meetings.
 9               Did these supervisors ever
10    explain to you that tenants were complaining
11    about your work?
12         A.    No. They just met with me for
13    work stuff.
14         Q.    You stated earlier that you
15    stopped working at Milbank in January of
16    2009; is that correct?
17         A.    Yes.
18         Q.    Why are you no longer working at
19    Milbank?
20         A.    Because they gave me a letter of
21    retirement. They told me they were going to
22    give me no more work and that's the only
23    thing they told me and they gave me a month
24    to get out of the apartment.
25         Q.    Why were they terminating your
```

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

PEDRO CANELA-RODRIGUEZ,

        Plaintiff,

                             **AFFIDAVIT OF**
                             **RAY RADPARVAR**

    - against -

                         **INDEX NO. 09 CIV6588 (JSR)**

MILBANK REAL ESTATE, and FRIEDA
RODRIGUEZ,

           **Defendants.**
-------------------------------------------------------------x

STATE OF NEW YORK    )
                        ) ss:
COUNTY OF WESTCHESTER  )

      Plaintiff, RAY RADPARVAR, being duly sworn, deposes and says:

    1. I work as Director of Maintenance and Assistant Property Supervisor for the

Defendant, Milbank Real Estate since I was hired in March, 2008.

    2. Accordingly, I enforce and implement corporate policy in New York and

therefore am fully familiar with the facts and circumstances of this case and have

personal knowledge of Plaintiff's job performance and termination.

    3. The plaintiff worked at Milbank Real Estate from approximately November 8,

2007 until he was terminated on or about January 2, 2009.

    4. Plaintiff was hired a superintendant and was responsible for two (2) of Defendant

Milbank's buildings: 2770 and 2780 Kingsbridge Terrace in the Bronx, New York.

These buildings were residential.

5. As a superintendant, the plaintiff was in a supervisory capacity and managed employees of the defendant, including at least two (2) porters. Plaintiff made recommendations on the hiring and firing of porters. Plaintiff was given his own office where he maintained records and work orders. Plaintiff typically interfaced with the property manager on personnel and building matters, including emergencies. See Exhibit A. Plaintiff duties also included routine interaction with tenants of the building. See Exhibit A.

6. In addition, plaintiff collaborated with independent contractors that were hired to perform services at the Defendant's buildings, directing them to perform work.

7. As a superintendant, Plaintiff was paid a flat salary of $500.00 per week. See Exhibit B. Because plaintiff worked forty hours per week, typically from 8:00 a.m to 4:00 p.m., he averaged $12.50 per hour, well over federal and state minimum wage law. See Exhibit B and Exhibit C. It is Defendant's policy that all superintendants are paid a salary.

8. Plaintiff lived rent free for at least a year at 2770 Kingsbridge Terrace did not pay electricity, and had a company phone free of charge. He lived in a two-bedroom apartment with an estimated rental value of $1000.00 per month. The value of the electricity and the phone was an estimated $50.00 per month, for each respectively.

9. Plaintiff signed time sheets demonstrating a five (5) day workweek, without having to work weekends and holidays. See Exhibit C.

10. Plaintiff was hired as an employee at-will by Defendant Milbank. See Exhibit D.

11. Plaintiff committed a series of disciplinary infractions, for which he admitted through his signature. See Exhibit E.

12. These infractions included lack of communication with managers, including not answering the company cell phone, failure to follow directives, insubordination, threats of violence towards managers, foul language towards managers and tenants, and threatening tenants to have wife his come over to their apartment and "beat them up." See Exhibit E.

13. Plaintiff was terminated on January 2, 2009, for cause. See Exhibit F.

Ray Radparvar

Sworn to and subscribed to me
on the 15th of February, 2010

Notary Public

JOSE WILLIAM COTTO
Notary Public   State of New York   CO 6 197866
No   30404
Qualifi:   Bronx County
Commission Expires Sept. 25, 19
August 28, 2012

# EXHIBIT  A



**DEFENDANT'S EXHIBIT**
A  1/19/10

## GENERAL RULES AND REGULATIONS FOR SUPERINTENDENTS

The success of your building depends to a great extent on the care and attention you give it. We are setting forth below a list of general Instructions.

Clean Sidewalks. Mop the main entrance, vestibule and public hall daily. Do not sweep debris into street — put it in a garbage can, or plastic bag.

2.  Stairs and halls should be swept daily and mopped at least twice weekly. Woodwork in hall should be cleaned at least once a week.

3.  Keep Basement Clean. Do not permit rubbish, garbage, furniture or debris to accumulate. If you have such an accumulation report this to your Property Manager who will arrange to have a truck pick up and remove same. Keep basement locked and all unauthorized persons out.

4.  Garbage Collections. Instruct tenants to put garbage in proper receptacles. Keep receptacles covered. Remove garbage cans or bags to street on days of sanitation pick-up.

5.  Clean Yards and Airshafts every day. Check roof bulkhead and skylight. Keep roof, hallways and fire escapes free of all obstructions and debris.

6.  Watch Your Lights. See that they are turned on and off at proper times. Replace burnt out bulbs in public area and basement immediately, using at least 60 watt incandescent and 20 watt flourescent bulbs.

7.  Make minor repairs such as changing fuses, washers, where possible, closing valves to avoid leaks, floods, etc.

8.  All Tenant Move-Out to be reported promptly to Property Manager.

9.  Vacant Apartments are to be cleaned and kept clean at all times. They must be kept securely locked at all times and may be re-entered or used by Superintendent or others. Report any unsealed doors or squatters to Property Manager immediately.

10.  Maintain Heat and Hot Water in Building. If the boiler is not functioning and you cannot make it run, call the Property Manager immediately.

11.  Report any defect in the roof, plumbing, boiler, elevator, electricity, etc., to your Property Manager immediately.

12.  Snow must be removed four hours after the end of snow falling. Use salt and sand on ice.

13.  Report all accidents without delay to your Manager.

14.  Report any Illegal Conduct or misbehavior on the part of any tenant or visitor. If there is evidence of addicts (glassine envelopes, needles, etc.) or other undisirables using the building, call the police and notify the Property Manager.

15.  Be Neat, Polite and Courteous at all times.

16.  In case of emergency during weekend or after 5pm, call emergency number_____ or lead Superintendent_____. Know your building. Know where to cut off water, gas, electric, etc.. Keep readily available a listing of Police and Fire Dept. telephone numbers as well as those of your superiors. Report on Monday morning to Property Manager any emergencies that occured on weekend.

17.

18.  The apartment herein granted for dwelling and office purposes is incidental to hire.

I have read and understand the Work Rules and Regulations presented in Section 1 through 18 of this document.

*Pedro Bahng la R*

re of Superintendent

Property Manager

11/29/07

Date

/  /

Date

# EXHIBIT  B

## PEDRO CANELA RODRIGUEZ

### HOURS WORKED VS HOURS PAID

| Pay Period: | Gross Wages (PAID SALARY EXEMPT) Based on Payroll Report | Hours Paid Based on Payroll Report | Average Hourly Wage based on hours paid | Timesheet Signed? |
|---|---|---|---|---|
| Claim for hours beginning period 11/8/07 | | | | |
| 11-1-07 to 11-15-07 | 1083.32 | 88 | $12.31 | NONE |
| 11-16-07 to 11-30-07 | 1083.32 | 88 | $12.31 | NONE |
| 12-1-07 to 12-15-07 | 1083.32 | 88 | $12.31 | NONE |
| 12-16-07 to 12-31-07 | 1083.32 | 88 | $12.31 | NONE |
| 1-1-08 to 1-12-08 | 899.99 | 65 | $13.85 | no |
| 1-13-08 to 1-26-08 | 999.99 | 80 | $12.50 | yes? |
| 1-27-08 to 2-9-08 | 999.99 | 80 | $12.50 | yes? |
| 2-10-08 to 2-23-08 | 999.99 | 80 | $12.50 | NONE |
| 2-24-08 to 3-8-08 | 999.99 | 80 | $12.50 | yes? |
| 3-9-08 to 3-22-08 | 999.99 | 80 | $12.50 | yes? |
| 3-23-08 to 4-5-08 | 999.99 | 80 | $12.50 | yes? |
| 4-6-08 to 4-19-08 | 999.99 | 80 | $12.50 | yes? |
| 4-20-08 to 5-3-08 | 999.99 | 80 | $12.50 | yes? |
| 5-4-08 to 5-18-08 | 999.99 | 80 | $12.50 | yes? |
| 5-19-08 to 5-31-08 | 999.99 | 80 | $12.50 | yes? |
| 6-1-08 to 6-14-08 | 999.99 | 80 | $12.50 | yes? |
| 6-15-08 to 6-28-08 | 999.99 | 80 | $12.50 | yes? |
| 6-29-08 to 7-12-08 | 999.99 | 80 | $12.50 | yes? |
| 7-13-08 to 7-26-08 | 999.99 | 80 | $12.50 | yes? |
| 7-27-08 to 8-9-08 | 999.99 | 80 | $12.50 | yes? |
| 8-10-08 to 8-23-08 | 999.99 | 80 | $12.50 | yes? |
| 8-24-08 to 9-6-08 | 999.99 | 80 | $12.50 | yes? |
| 9-7-08 to 9-20-08 | 999.99 | 80 | $12.50 | yes? |
| 9-21-08 to 10-4-08 | 999.99 | 80 | $12.50 | yes? |
| 10-5-08 to 10-18-08 | 999.99 | 80 | $12.50 | yes? |
| 10-19-08 to 11-1-08 | 999.99 | 80 | $12.50 | yes? |
| 11-2-08 to 11-15-08 | 999.99 | 80 | $12.50 | yes? |
| 11-16-08 to 11-29-08 | 999.99 | 80 | $12.50 | yes? |
| 11-30-08 to 12-13-08 | 999.99 | 80 | $12.50 | yes? |
| 12-14-08 to 12-27-08 | 999.99 | 80 | $12.50 | yes? |
| 12-28-08 to 1-10-09 | 999.99 | 80 | $12.50 | no |
| Claim for hours ending period 1/5/09 | | | | |

*Last Day Worked 1/2/09 - Final Pay is $830.77 Gross*

Case 1:09-cv-06538-JSR Document ... Filed 02/18/10 Page 32 of 122

# SUPREME REALTY MANAGEMENT, INC.
## Payroll Summary
### November 1, 2007 through January 5, 2009

| | Nov 1 - 10, 07 | Nov 11 - 24, 07 | Nov 25 - Dec 8, 07 | Dec 9 - 22, 07 | Dec 23, '07 - Jan 5, 0... | Jan 6 - 19, 08 | Jan 20 - Feb 2, 08 | Feb 3 - 16, 08 | Feb 17 - Mar 1, 08 |
|---|---|---|---|---|---|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | | | | | | | |
| **Gross Pay** | | | | | | | | | |
| Salary | 1,083.32 | 1,083.32 | 1,083.32 | 1,083.32 | 1,083.32 | 899.99 | 999.99 | 999.99 | 999.99 |
| Sick Salary | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Gross Pay** | 1,083.32 | 1,083.32 | 1,083.32 | 1,083.32 | 1,083.32 | 899.99 | 999.99 | 999.99 | 999.99 |
| **Deductions from Gross Pay** | | | | | | | | | |
| Child Support-NY | -239.42 | -312.00 | -239.42 | -438.50 | -439.15 | -370.85 | -286.10 | -286.10 | -286.10 |
| NY Disability 2009 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Deductions from Gross Pay** | -239.42 | -312.00 | -239.42 | -438.50 | -439.15 | -370.85 | -286.10 | -286.10 | -286.10 |
| **Adjusted Gross Pay** | 843.90 | 771.32 | 843.90 | 644.82 | 644.17 | 529.14 | 713.89 | 713.89 | 713.89 |
| **Taxes Withheld** | | | | | | | | | |
| Federal Withholding | -88.00 | -88.00 | -88.00 | -88.00 | -88.00 | -65.00 | -80.00 | -80.00 | -80.00 |
| Medicare Employee | -15.71 | -15.71 | -15.71 | -15.70 | -15.71 | -13.05 | -14.50 | -14.50 | -14.50 |
| Social Security Employee | -67.17 | -67.16 | -67.17 | -67.17 | -67.17 | -55.80 | -61.99 | -62.00 | -62.00 |
| NY - Withholding | -33.23 | -33.23 | -33.23 | -33.23 | -33.23 | -24.77 | -30.67 | -30.67 | -30.67 |
| NY - Disability | -1.30 | -1.30 | -1.30 | -1.30 | -0.90 | -1.20 | -1.20 | -1.20 | -1.20 |
| **Total Taxes Withheld** | -205.41 | -205.40 | -205.41 | -205.40 | -205.01 | -159.82 | -188.36 | -188.37 | -188.37 |
| **Additions to Net Pay** | | | | | | | | | |
| BONUS1 | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Additions to Net Pay** | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Pay** | 638.49 | 565.92 | 638.49 | 539.42 | 439.16 | 369.32 | 525.53 | 525.52 | 525.52 |
| **Employer Taxes and Contributions** | | | | | | | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 | 0.00 | 8.67 | 7.20 | 8.00 | 8.00 | 8.00 |
| Medicare Company | 15.71 | 15.71 | 15.71 | 15.70 | 15.71 | 13.05 | 14.50 | 14.50 | 14.50 |
| Social Security Company | 67.17 | 67.16 | 67.17 | 67.17 | 67.17 | 55.80 | 61.99 | 62.00 | 62.00 |
| NY - Disability Company | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| NY - Unemployment Company | 0.00 | 0.00 | 0.00 | 0.00 | 44.42 | 36.90 | 41.00 | 40.99 | 41.00 |
| **Total Employer Taxes and Contribut** | 82.88 | 82.87 | 82.88 | 82.87 | 135.97 | 112.95 | 125.49 | 125.49 | 125.50 |

# SUPREME REALTY MANAGEMENT, INC.
## Payroll Summary
### November 1, 2007 through January 5, 2009

| | Mar 2 - 15, 08 | Mar 16 - 29, 08 | Mar 30 - Apr 12, 08 | Apr 13 - 26, 08 | Apr 27 - May 10, 08 | May 11 - 24, 08 | May 25 - Jun 7, 08 | Jun 8 - 21, 08 | Jun 22 - Jul 5, 08 |
|---|---|---|---|---|---|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | | | | | | | |
| **Gross Pay** | | | | | | | | | |
| Salary | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 |
| Sick Salary | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Gross Pay** | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 |
| **Deductions from Gross Pay** | | | | | | | | | |
| Child Support-NY | -286.10 | -286.10 | -286.10 | -286.09 | -286.09 | -286.09 | -286.09 | -286.09 | -286.09 |
| NY Disability 2009 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 |
| **Total Deductions from Gross Pay** | -286.93 | -286.93 | -286.93 | -286.92 | -286.92 | -286.92 | -286.92 | -286.92 | -286.92 |
| **Adjusted Gross Pay** | 713.06 | 713.06 | 713.06 | 713.07 | 713.07 | 713.07 | 713.07 | 713.07 | 713.07 |
| **Taxes Withheld** | | | | | | | | | |
| Federal Withholding | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 |
| Medicare Employee | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 |
| Social Security Employee | -62.00 | -62.00 | -62.00 | -62.00 | -62.00 | -62.00 | -62.00 | -62.00 | -62.00 |
| NY - Withholding | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 |
| NY - Disability | -1.20 | -1.20 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Taxes Withheld** | -188.37 | -188.37 | -187.17 | -187.17 | -187.17 | -187.17 | -187.17 | -187.17 | -187.17 |
| **Net Pay** | 524.69 | 524.69 | 525.89 | 525.90 | 525.90 | 525.90 | 525.90 | 525.90 | 525.90 |
| **Additions to Net Pay** | | | | | | | | | |
| BONUS1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Additions to Net Pay** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Pay** | 524.69 | 524.69 | 525.89 | 525.90 | 525.90 | 525.90 | 525.90 | 525.90 | 525.90 |
| **Employer Taxes and Contributions** | | | | | | | | | |
| Federal Unemployment | 8.00 | 8.00 | 0.13 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Medicare Company | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 |
| Social Security Company | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 |
| NY - Disability Company | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| NY - Unemployment Company | 41.00 | 41.00 | 41.00 | 21.19 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Employer Taxes and Contributions** | 125.50 | 125.50 | 117.63 | 97.69 | 76.50 | 76.50 | 76.50 | 76.50 | 76.50 |

# SUPREME REALTY MANAGEMENT, INC.
## Payroll Summary
### November 1, 2007 through January 5, 2009

| | Jul 6 - 19, 08 | Jul 20 - Aug 2, 08 | Aug 3 - 16, 08 | Aug 17 - 30, 08 | Aug 31 - Sep 13, 08 | Sep 14 - 27, 08 | Sep 28 - Oct 11, 08 | Oct 12 - 25, 08 | Oct 26 - Nov 8, 08 |
|---|---|---|---|---|---|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | | | | | | | |
| **Gross Pay** | | | | | | | | | |
| Salary | 999.99 | 999.99 | 999.99 | 999.99 | 799.99 | 999.99 | 999.99 | 999.99 | 999.99 |
| Sick Salary | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Gross Pay** | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 | 999.99 |
| **Deductions from Gross Pay** | | | | | | | | | |
| Child Support-NY | -286.00 | -286.09 | -286.09 | -286.09 | -409.00 | -409.00 | -409.00 | -409.00 | -409.00 |
| NY Disability 2009 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 | -0.83 |
| **Total Deductions from Gross Pay** | -286.83 | -286.92 | -286.92 | -286.92 | -409.83 | -409.83 | -409.83 | -409.83 | -409.83 |
| **Adjusted Gross Pay** | 713.16 | 713.07 | 713.07 | 713.07 | 590.16 | 590.16 | 590.16 | 590.16 | 590.16 |
| **Taxes Withheld** | | | | | | | | | |
| Federal Withholding | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 | -80.00 |
| Medicare Employee | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.50 | -14.49 |
| Social Security Employee | -62.00 | -62.00 | -62.00 | -62.00 | -61.99 | -62.00 | -62.00 | -62.00 | -62.00 |
| NY - Withholding | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 | -30.67 |
| NY - Disability | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Taxes Withheld** | -187.17 | -187.17 | -187.17 | -187.17 | -187.16 | -187.17 | -187.17 | -187.17 | -187.16 |
| **Additions to Net Pay** | | | | | | | | | |
| BONUS1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Additions to Net Pay** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Pay** | 525.99 | 525.90 | 525.90 | 525.90 | 403.00 | 402.99 | 402.99 | 402.99 | 403.00 |
| **Employer Taxes and Contributions** | | | | | | | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Medicare Company | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.50 | 14.49 |
| Social Security Company | 62.00 | 62.00 | 62.00 | 62.00 | 61.99 | 62.00 | 62.00 | 62.00 | 62.00 |
| NY - Disability Company | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| NY - Unemployment Company | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Employer Taxes and Contributions** | 76.50 | 76.50 | 76.50 | 76.50 | 76.49 | 76.50 | 76.50 | 76.50 | 76.49 |

# SUPREME REALTY MANAGEMENT, INC.
## Payroll Summary
### November 1, 2007 through January 5, 2009

| | Nov 9 - 22, 08 | Nov 23 - Dec 6, 08 | Dec 7 - 20, 08 | Dec 21, '08 - Jan 3, 0 | Jan 4 - 5, 09 | TOTAL Nov 1, '07 - Jan 5, 09 |
|---|---|---|---|---|---|---|
| **Employee Wages, Taxes and Adjust...** | | | | | | |
| **Gross Pay** | | | | | | |
| Salary | 999.99 | 999.99 | 899.99 | 999.99 | 0.00 | 31,016.34 |
| Sick Salary | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 300.00 |
| **Total Gross Pay** | 999.99 | 999.99 | 999.99 | 999.99 | 0.00 | 31,316.34 |
| **Deductions from Gross Pay** | | | | | | |
| Child Support-NY | -409.00 | -409.00 | -409.00 | -409.00 | 0.00 | -10,297.75 |
| NY Disability 2009 | -0.83 | -0.83 | -0.83 | -0.83 | 0.00 | -18.26 |
| **Total Deductions from Gross Pay** | -409.83 | -409.83 | -409.83 | -409.83 | 0.00 | -10,316.01 |
| **Adjusted Gross Pay** | 590.16 | 590.16 | 590.16 | 590.16 | 0.00 | 21,000.33 |
| **Taxes Withheld** | | | | | | |
| Federal Withholding | -80.00 | -80.00 | -80.00 | -80.00 | 0.00 | -2,505.00 |
| Medicare Employee | -14.50 | -14.50 | -14.50 | -14.50 | 0.00 | -454.08 |
| Social Security Employee | -62.00 | -62.00 | -62.00 | -62.00 | 0.00 | -1,941.62 |
| NY - Withholding | -30.67 | -30.67 | -30.67 | -30.67 | 0.00 | -957.67 |
| NY - Disability | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -13.30 |
| **Total Taxes Withheld** | -187.17 | -187.17 | -187.17 | -187.17 | 0.00 | -5,871.67 |
| **Additions to Net Pay** | | | | | | |
| BONUS1 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 200.00 |
| **Total Additions to Net Pay** | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 200.00 |
| **Net Pay** | 402.99 | 402.99 | 502.99 | 402.99 | 0.00 | 15,328.66 |
| **Employer Taxes and Contributions** | | | | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56.00 |
| Medicare Company | 14.50 | 14.50 | 14.50 | 14.50 | 0.00 | 454.08 |
| Social Security Company | 62.00 | 62.00 | 62.00 | 62.00 | 0.00 | 1,941.62 |
| NY - Disability Company | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| NY - Unemployment Company | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 348.50 |
| **Total Employer Taxes and Contribut** | 76.50 | 76.50 | 76.50 | 76.50 | 0.00 | 2,800.20 |

# EXHIBIT  C

01/14/2008  13:12    7186557900                                          PAGE  05/15



---

### EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: _____ PEDRO C. RODRIGUEZ_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: ___01/01/2008-01/11/08_____

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|--------|------|----------|------|---------|-------|
| SUN | | | | | | |
| MON | | | | | | |
| TUES | OFF | | | | ✓ | |
| WED | 1/2/08 | ✓ | | | | |
| THUR | 1/3/08 | ✓ | | | | |
| FRI | 1/4/08 | ✓ | | | | |
| SAT | OFF | | | | | |
| SUN | OFF | | | | | |
| MON | 1/7/08 | ✓ | | | | |
| TUES | 1/8/08 | ✓ | | | | |
| WED | 1/9/08 | ✓ | | | | |
| THUR | 1/10/08 | ✓ | | | | |
| FRI | 1/11/08 | ✓ | | | | |
| SAT | OFF | | | | | |

Exempt Employee's Signature: _____ Date:_____

Manager or HR Signature: _____ Date: 1/14/08

## EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: _____ PEDRO RODRIGUEZ  LAST 4 OF SS: _____

PAY-PERIOD ENDING: ___ 01/25/08 _____

**(Put a check in the appropriate column):**

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|-----|------|------|----------|------|---------|-------|
| SUN | 01/13/08 | | | | | |
| MON | 01/14/08 | ✓ | | | | |
| TUES | 01/15/08 | ✓ | | | | |
| WED | 01/16/08 | ✓ | | | | |
| THUR | 01/17/08 | ✓ | | | | |
| FRI | 01/18/08 | ✓ | | | | |
| SAT | OFF | | | | | |
| SUN | OFF | | | | | |
| MON | 01/21/08 | ✓ | | | | |
| TUES | 01/22/08 | ✓ | | | | |
| WED | 01/23/08 | ✓ | | | | |
| THUR | /01/24/08 | ✓ | | | | |
| FRI | 01/25/08 | ✓ | | | | |
| SAT | 1/12/08 | | | | | |

Exempt Employee's Signature: _Pedro Rodrigue/a_ Date: 1/25/08

Manager or HR Signature: _____ Date: 1/25/08

## EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: _____ PEDRO RODRIGUEZ  LAST 4 OF SS: _____

PAY-PERIOD ENDING: ___ 01/25/08 _____

**(Put a check in the appropriate column):**

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | 01/13/08 | | | | | |
| MON | 01/14/08 | / | | | | |
| TUES | 01/15/08 | / | | | | |
| WED | 01/16/08 | / | | | | |
| THUR | 01/17/08 | / | | | | |
| FRI | 01/18/08 | / | | | | |
| SAT | OFF | | | | | |
| SUN | OFF | | | | | |
| MON | 01/21/08 | / | | | | |
| TUES | 01/22/08 | / | | | | |
| WED | 01/23/08 | / | | | | |
| THUR | /01/24/08 | / | | | | |
| FRI | 01/25/08 | / | | | | |
| SAT | 1/12/08 | | | | | |

Exempt Employee's Signature: _Pedro Rodriguez_ Date: _1/25/08_

Manager or HR Signature: _____ Date: _1/25/08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro C. Rodriguez_ LAST 4 OF SS: ___4572___

PAY-PERIOD ENDING: ___01/26/08-02/08/08___

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 1/28/08 | ✓ | | | | |
| TUES | 1/29/08 | ✓ | | | | |
| WED | 1/30/08 | ✓ | | | | |
| THUR | 1/31/08 | ✓ | | | | |
| FRI | 2/1/08 | ✓ | | | | |
| SAT | OFF | | | | | |
| SUN | OFF | | | | | |
| MON | 2/4/08 | ✓ | | | | |
| TUES | 2/5/08 | ✓ | | | | |
| WED | 2/6/08 | ✓ | | | | |
| THUR | 2/7/08 | ✓ | | | | |
| FRI | 2/08/08 | ✓ | | | | |
| SAT | OFF | | | | | |

Exempt Employee's Signature: _____     Date: _2/11/08_

Manager or HR Signature: _____     Date: _2/11/08_

## EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: Pedro C. Rodriguez LAST 4 OF SS: _____

PAY-PERIOD ENDING: 2/24/08 – 3/8/08

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|-----|------|------|----------|------|---------|-------|
| SUN |      |      |          |      |         |       |
| MON | 2/25 | ✓    |          |      |         |       |
| TUES | 2/26 | ✓   |          |      |         |       |
| WED | 2/27 | ✓    |          |      |         |       |
| THUR | 2/28 | ✓   |          |      |         |       |
| FRI | 2/29 | ✓    |          |      |         |       |
| SAT |      |      |          |      |         |       |
| SUN |      | ✓    |          |      |         |       |
| MON | 3/3  |      |          |      |         |       |
| TUES | 3/4 | ✓    |          |      |         |       |
| WED | 3/5  | ✓    |          |      |         |       |
| THUR | 3/6 | ✓    |          |      |         |       |
| FRI | 3/6  | ✓    |          |      |         |       |
| SAT |      |      |          |      |         |       |

Exempt Employee's Signature: Pedro Candare Rodges Date: 3/10/08

Manager or HR Signature: _____ Date: 3/10/0

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _____ PEDRO RODRIGUEZ _ LAST 4 OF SS: _____

PAY-PERIOD ENDING: __3-21-08__

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | 9.00 | | | | | |
| MON | 9.00 | | | | | |
| TUES | 9.00 | | | | | |
| WED | 9.00 | | | | | |
| THUR | 9.00 | | | | | |
| FRI | 9.00 | | | | | |
| SAT | 9.00 | | | | | |
| SUN | 9.00 | | | | | |
| MON | 9.00 | | | | | |
| TUES | 9.00 | | | | | |
| WED | 9.00 | | | | | |
| THUR | 9.00 | | | | | |
| FRI | 9.00 | | | | | |
| SAT | 9.00 | | | | | |

Exempt Employee's Signature: _Pedro Canela, R_ Date: _____

Manager or HR Signature: _____ Date: 3/21/08

| EXEMPT ATTENDANCE SHEET |
| --- |

EMPLOYEE NAME: _Pedro Canela_LAST 4 OF SS: _____

PAY-PERIOD ENDING $3|23|08 - 4|5|08$

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
| --- | --- | --- | --- | --- | --- | --- |
| SUN | 3·23 | | | | | |
| MON | 324 | ✓ | | | | |
| TUES | 325 | ✓ | | | | |
| WED | 326 | ✓ | | | | |
| THUR | 3·27 | ✓ | | | | |
| FRI | 328 | ✓ | | | | |
| SAT | 3·29 | | | | | |
| SUN | 3·30 | | | | | |
| MON | 331 | ✓ | | | | |
| TUES | 41 | ✓ | | | | |
| WED | 4·2 | ✓ | | | | |
| THUR | 4·3 | ✓ | | | | |
| FRI | 44 | ✓ | | | | |
| SAT | 45 | | | | | |

Exempt Employee's Signature: _____ Date: _____

Manager or HR Signature: _____ Date: 4/4/08

## EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: _Pedro Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: ___4\19\08___

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|------|------|----------|------|---------|-------|
| SUN | | | | | | |
| MON | 4\7 | ✓ | | | | |
| TUES | 4\8 | ✓ | | | | |
| WED | 4\9 | ✓ | | | | |
| THUR | 4\10 | ✓ | | | | |
| FRI | 4\11 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 4\14 | ✓ | | | | |
| TUES | 4\15 | ✓ | | | | |
| WED | 4\16 | ✓ | | | | |
| THUR | 4\17 | ✓ | | | | |
| FRI | 4\18 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _Pedro Canela_ Date: _____

Manager or HR Signature: _____ Date: _4\18\08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pe d r 0 Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: 4 20 – 5 3 -08

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | 4 20 | | | | | |
| MON | 4 21 | ✓ | | | | |
| TUES | 4 22 | ✓ | | | | |
| WED | 4 23 | ✓ | | | | |
| THUR | 4 24 | ✓ | | | | |
| FRI | 4 25 | ✓ | | | | |
| SAT | 4 26 | | | | | |
| SUN | 4 27 | | | | | |
| MON | 4 28 | ✓ | | | | |
| TUES | 4 29 | ✓ | | | | |
| WED | 4 30 | ✓ | | | | |
| THUR | 5 1 | ✓ | | | | |
| FRI | 5 2 | ✓ | | | | |
| SAT | 5 3 | | | | | |

Exempt Employee's Signature: _Pedro canela_ Date: _____

Manager or HR Signature: _____ Date: 5 2 08

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro  Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: _____5-16-08_____

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|------|------|----------|------|---------|-------|
| SUN  |      |      |          |      |         |       |
| MON  |      | ✓    |          |      |         |       |
| TUES |      | ✓    |          |      |         |       |
| WED  |      |      |          |      |         |       |
| THUR |      | ✓    |          |      |         |       |
| FRI  |      | ✓    |          |      |         |       |
| SAT  |      |      |          |      |         |       |
| SUN  |      |      |          |      |         |       |
| MON  |      | ✓    |          |      |         |       |
| TUES |      | ✓    |          |      |         |       |
| WED  |      |      |          |      |         |       |
| THUR |      | ✓    |          |      |         |       |
| FRI  |      | ✓    |          |      |         |       |
| SAT  |      |      |          |      |         |       |

Exempt Employee's Signature: _Pedro  Canela_ Date:_____

Manager or HR Signature: _____ Date: _5|16|8_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: *Pedro Canela* LAST 4 OF SS: _____

PAY-PERIOD ENDING: _5/18/08 – 5/31/08_

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | | ✓ | | | | |
| TUES | | ✓ | | | | |
| WED | | ✓ | | | | |
| THUR | | ✓ | | | | |
| FRI | | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | | ⋮ | | | ✓ | |
| TUES | | ✓ | | | | |
| WED | | ✓ | | | | |
| THUR | | ✓ | | | | |
| FRI | | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: *Pedro Canela* Date: _____

Manager or HR Signature: _____ Date: _6/2/08_

## EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: *Pedro Canela* LAST 4 OF SS: _____

PAY-PERIOD ENDING: ___6/14/2008___

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|------|------|----------|------|---------|-------|
| SUN | | | | | | |
| MON | 6/2 | ✓ | | | | |
| TUES | 6/3 | ✓ | | | | |
| WED | 6/4 | ✓ | | | | |
| THUR | 6/5 | ✓ | | | | |
| FRI | 6/6 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 6/9 | ✓ | | | | |
| TUES | 6/10 | ✓ | | | | |
| WED | 6/11 | ✓ | | | | |
| THUR | 6/12 | ✓ | | | | |
| FRI | 6/13 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: *Pedro Canela*  Date:_____

Manager or HR Signature: _____  Date: 6/16/08

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro   Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: _6/15/ 6/28_

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | 6\|15 | | | | | |
| MON | 6\|16 | ✓ | | | | |
| TUES | 6\|17 | ✓ | | | | |
| WED | 6\|18 | ✓ | | | | |
| THUR | 6\|19 | ✓ | | | | |
| FRI | 6\|20 | ✓ | | | | |
| SAT | 6\|21 | | | | | |
| SUN | | | | | | |
| MON | 6\|23 | ✓ | | | | |
| TUES | 6\|24 | ✓ | | | | |
| WED | 6\|25 | ✓ | | | | |
| THUR | 6\|26 | ✓ | | | | |
| FRI | 6\|27 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _Pedro cane/a_    Date: _____

Manager or HR Signature: _Amider By_    Date: _6/27/08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: _____7 -26-08_____

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 7/14/08 | ✓ | | | | |
| TUES | 7/15/08 | ✓ | | | | |
| WED | 7/16/08 | ✓ | | | | |
| THUR | 7/17/06 | ✓ | | | | |
| FRI | 7/18/08 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 7/21/08 | ✓ | | | | |
| TUES | 7/22/08 | ✓ | | | | |
| WED | 7/23/08 | ✓ | | | | |
| THUR | 7/24/08 | ✓ | | | | |
| FRI | 7/25/08 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _Pedro Canela_ Date: _7/25/08_

Manager or HR Signature: _____ Date: _7/25/08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: __7-12-08__

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 6/30 | ✓ | | | | |
| TUES | 7/1/80 | ✓ | | | | |
| WED | 7/2/80 | ✓ | | | | |
| THUR | 7/3/80 | ✓ | | | | |
| FRI | 7/4/08 | | | | ✓ | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 7/7/08 | ✓ | | | | |
| TUES | 7/8/08 | ✓ | | | | |
| WED | 7/9/08 | ✓ | | | | |
| THUR | 7/10/08 | ✓ | | | | |
| FRI | 7/11/08 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _____ Date: _____

Manager or HR Signature: _____ Date: 7/11/08

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: _____ 8 -9 -08_

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | . |
| MON | 7/28/08 | ✓ | | | | |
| TUES | 7/29/08 | ✓ | | | | |
| WED | 7/30/08 | ✓ | | | | |
| THUR | 7/31/08 | ✓ | | | | |
| FRI | 8/1/08 | ✓ | | | | |
| SAT | | | | | | . |
| SUN | | | | | | |
| MON | 8/4/08 | ✓ | | | | |
| TUES | 8/5/08 | ✓ | | | | |
| WED | 8/6/08 | ✓ | | | | |
| THUR | 8/7/08 | ✓ | | | | |
| FRI | 8/8/08 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _Pedro Canela_ Date:_____

Manager or HR Signature: _____ Date: _8/8/08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: Sase N Rivera  LAST 4 OF SS: 3200

PAY-PERIOD ENDING: 6-23-09

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 8-11-08 | ✓ | | | | |
| TUES | 8-12-08 | ✓ | | | | |
| WED | 8-13-08 | ✓ | | | | |
| THUR | 8-14-08 | ✓ | | | | |
| FRI | 8-15-08 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 8-18-08 | ✓ | | | | |
| TUES | 8-19-08 | ✓ | | | | |
| WED | 8-20-08 | ✓ | | | | |
| THUR | 8-21-08 | ✓ | | | | |
| FRI | 8-22-08 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _____ Date: 8-22-08

Manager or HR Signature: _____ Date: 8/22/08

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: ___9-6-08___

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|-------|------|----------|------|---------|-------|
| SUN  |       |      |          |      |         |       |
| MON  | 8/25/08 | ✓  |          |      |         |       |
| TUES | 8/26/08 | ✓  |          |      |         |       |
| WED  | 8/27/08 | ✓  |          |      |         |       |
| THUR | 8/28/08 | ✓  |          |      |         |       |
| FRI  | 8/29/08 | ✓  |          |      |         |       |
| SAT  |       |      |          |      |         |       |
| SUN  |       |      |          |      |         |       |
| MON  | 9/2/08 | .   |          |      | ✓       |       |
| TUES | 9/3/08 | ✓  |          |      |         |       |
| WED  | 9/4/08 | ✓  |          |      |         |       |
| THUR | 9/4/08 | ✓  |          |      |         |       |
| FRI  | 9/5/08 | ✓  |          |      |         |       |
| SAT  |       |      |          | -    |         |       |

Exempt Employee's Signature: _Pedro Canela_ Date: _____

Manager or HR Signature: _____ Date: _9/5/08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: *Pedro. Canela* LAST 4 OF SS: _____

PAY-PERIOD ENDING: _____ 9 - 20 - 08

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | 9/7/08 | | | | | |
| MON | 9/8/08 | ✓ | | | | |
| TUES | 9/9/08 | ✓ | | | | |
| WED | 9/10/08 | ✓ | | | | |
| THUR | 9/11/08 | ✓ | | | | |
| FRI | 9/12/08 | ✓ | | | | |
| SAT | 9/13/08 | | | | | |
| SUN | 9/14/08 | | | | | |
| MON | 9/15/08 | ✓ | | | | |
| TUES | 9/16/08 | ✓ | | | | |
| WED | 9/17/08 | ✓ | | | | |
| THUR | 9/18/08 | ✓ | | | | |
| FRI | 9/19/08 | ✓ | | | | |
| SAT | 9/20/08 | | | | | |

Exempt Employee's Signature: *Pedro Canela.R* Date: _____

Manager or HR Signature: _____ Date: 9/19/08

EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: _Pedro Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: _10/3/08_ 10/4/08

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|---------|------|----------|------|---------|-------|
| SUN | | | | | | |
| MON | 9/22/08 | ✓ | | | | |
| TUES | 9/23/08 | ✓ | | | | |
| WED | 9/24/08 | ✓ | | | | |
| THUR | 9/25/08 | ✓ | | | | |
| FRI | 9/26/08 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 9/29/08 | ✓ | | | | |
| TUES | 9/30/08 | ✓ | | | | |
| WED | 10/1/08 | ✓ | | | | |
| THUR | 10/2/08 | ✓ | | | | |
| FRI | 10/3/08 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _____ Date: _____

Manager or HR Signature: _____ Date: _10-6-08_

EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: PEDRO CANELA LAST 4 OF SS: _____

PAY-PERIOD ENDING: 10-6-08 to 10-18-08

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|-----|------|------|----------|------|---------|-------|
| SUN | | | | | | |
| MON | 10-6 | ✓ | | | | |
| TUES | 10-7 | ✓ | | | | |
| WED | 10-8 | ✓ | | | | |
| THUR | 10-9 | ✓ | | | | |
| FRI | 10-10 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 10-13 | ✓ | | | | |
| TUES | 10-14 | ✓ | | | | |
| WED | 10-15 | ✓ | | | | |
| THUR | 10-16 | ✓ | | | | |
| FRI | 10-17 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: Pedro Canela    Date: 10/17/08

Manager or HR Signature: _____    Date: 10/17/08

Given by Maggie McGlarkin

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro Canela_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: _10/19/08_ — _11/1/08_

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 10·20 | ✓ | | | | |
| TUES | 10·21 | ✓ | | | | |
| WED | 10+22 | ✓ | | | | |
| THUR | 10·23 | ✓ | | | | |
| FRI | 10·24 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 10·27 | ✓ | | | | |
| TUES | 10·28 | ✓ | | | | |
| WED | 10·29 | ✓ | | | | |
| THUR | 10·30 | ✓ | | | | |
| FRI | 10·31 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _____   Date: _10/31/08_

Manager or HR Signature: _____   Date: _11/2/08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro Canela R_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: _11-29-09_

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 11-17-08 | ✓ | | | | |
| TUES | 11-18 | | | | | |
| WED | 11-19 | ✓ | | | | |
| THUR | 11-20 | ✓ | | | | |
| FRI | 11-21 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 11-24 | ✓ | | | | |
| TUES | 11-25 | | | | | |
| WED | 11 26 | ✓ | | | | |
| THUR | 11/27 | ✓ | | | ✓ | |
| FRI | 11/28 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _____   Date: _____

Manager or HR Signature: _____   Date: _12/01/08_

| EXEMPT ATTENDANCE SHEET |
|---|

EMPLOYEE NAME: _Pedro Canola_ LAST 4 OF SS: _____

PAY-PERIOD ENDING: 12/13/08

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|---|---|---|---|---|---|---|
| SUN | | | | | | |
| MON | 12/1/08 | | | | | |
| TUES | 12/2/08 | | | | | |
| WED | 12/3/08 | | | | | |
| THUR | 12/4/08 | | | | | |
| FRI | 12/5/08 | | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 12/8/08 | | | | | |
| TUES | 12/9/08 | | | | | |
| WED | 12/10/08 | | | | | |
| THUR | 12/11/08 | | | | | |
| FRI | 12/12/08 | | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _____ Date: _____

Manager or HR Signature: _____ Date: 12/15/05

2770-80 Kingsbridge Terr.

EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: Pedro Canela LAST 4 OF SS: _____ _____

PAY-PERIOD ENDING: 12/14 – 12/27

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|-----------|------|----------|------|---------|-------|
| SUN | | | ✓ | | | |
| MON | 12/15/08 | ✓ | | | | |
| TUES | 12/16/08 | ✓ | ✓ | | | |
| WED | 12/17/08 | ✓ | | | | |
| THUR | 12/18/08 | ✓ | | | | |
| FRI | 12/19/08 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 12/22/08 | ✓ | ✓ | | | |
| TUES | 12/23/08 | ✓ | ✓ | | | |
| WED | 12/24/08 | ✓ | | | | |
| THUR | Holiday | | | | ✓ | Xmas |
| FRI | 12/26/08 | ✓ | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: _____ Date: 12/26/08

Manager or HR Signature: _____ Date: 12/29/08

EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: Pedro Careles Rodriguez

PAY-PERIOD ENDING: 1 10 09

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|------|------|------|----------|------|---------|-------|
| SUN | | ✓ | | | | |
| MON | 12 29 | ✓ | | | | |
| TUES | 12 30 | ✓ | | | | |
| WED | 12 31 | ✓ | | | | |
| THUR | 1 1 | | | · | ✓ | |
| FRI | 1 2 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 1 5 | | | | | |
| TUES | 1 6 | | | | | |
| WED | 1 7 | | | | | |
| THUR | 1 8 | | | | | |
| FRI | 1 9 | | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: N A . _____ Date: _____

Manager or HR Signature: _____ Date: 1 9 08 .

EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: _Pedro Canela Rodrey_

PAY-PERIOD ENDING __1/3/09__

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|-----|------|------|----------|------|---------|-------|
| SUN | | | | | | |
| MON | 12/29 | ✓ | | | | |
| TUES | 12/30 | ✓ | | | | |
| WED | 12/31 | ✓ | | | | |
| THUR | 1/1 | | | | ✓ | |
| FRI | 1/2 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | | | | | | |
| TUES | | | | | | |
| WED | | | | | | |
| THUR | | | | | | |
| FRI | | | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: ___N A___ Date: _____

Manager or HR Signature: _____ Date: _1/5/09_

EXEMPT ATTENDANCE SHEET

EMPLOYEE NAME: Pedro Careless Rodriguez LAST 4 OF SS:

PAY-PERIOD ENDING: 1/10/09

*(Put a check in the appropriate column):*

| Day | Date | Work | Vacation | Sick | Holiday | Note: |
|-----|------|------|----------|------|---------|-------|
| SUN | | | ✓ | | | |
| MON | 12/29 | ✓ | | | | |
| TUES | 12/30 | ✓ | | | | |
| WED | 12/31 | ✓ | | | | |
| THUR | 1/1 | | | • | ✓ | |
| FRI | 1/2 | ✓ | | | | |
| SAT | | | | | | |
| SUN | | | | | | |
| MON | 1/5 | | | | | |
| TUES | 1/6 | | | | | • |
| WED | 1/7 | | | | | |
| THUR | 1/8 | | | | | |
| FRI | 1/9 | | | | | |
| SAT | | | | | | |

Exempt Employee's Signature: N/A                    Date: _____

Manager or HR Signature: _____          Date: 1/9/08 .

# EXHIBIT D

## AT-WILL EMPLOYMENT RELATIONSHIP

As your employer, we certainly hope that we and every employee will find the employment relationship satisfying and rewarding in all respects. At the same time, we recognize that relationships are not always mutually satisfactory.

To protect both parties' rights, it should be remembered that the employment relationship is terminable at-will, at the option of the employee or the employer. Moreover, no one in the organization, other than Aaron Yashouafar and Solyman Yashouafar has the authority or legal ability to modify the at-will nature of the employment relationship. Such modification can only been done if it is done specifically in a written agreement that is signed both by the aforementioned owners and the employee.

The completion of an orientation or probationary period does not affect the at-will nature of our employment relationship.

This represents an integrated agreement with respect to the at-will nature of the employment relationship.

Please sign this notice acknowledging that you have read and understand the at-will nature of our employment relationship.

Employee:

Pedro Canela

Print Name

Pedro canela

Signature

9|24|08

Date

By:    Human Resources



DEFENDANT'S EXHIBIT B 1|19|10

# EXHIBIT E

Scanned
10/30/08 *pc*

## DISCIPLINARY COUNSELING FORM

EMPLOYEE NAME: PEDRO CANEL A TODAY'S DATE: 10/30/08

DEPT/LOCATION: 2770-80 Kingsbridge TERRACE

### REASON FOR COUSELING:

X LACK OF COMMUNICATION
X WORKS TOO SLOW, LEAVES WORK FOR HELPER.
X BE RESPONSIVE TO OFFICE AND TENANTS.

### DETAILS OF SITUATION:
° FAILURE TO COMMUNICATE W/MGRS. WHEN HPD OR other VISITORS show-up. BUILD.
X FAILURE TO FOLLOW DIRECTIVE - EXE- MS. STEWARTS RELOCATION PROJECT.
° COMPLAINTS FROM TENANT'S - NOT RESPONSIVE TO THEIR NEEDS
STEPS NEEDED TO TAKE TO IMPROVE/CORRECT SITUATION:

X REPLACE W/NEW PROACTIVE SUPER

### NEXT ACTION TO BE TAKEN IF NOT CORRECTED:

☒ To be determined at management's discretion
☐ Immediate Termination

DEFENDANT'S
EXHIBIT
- D 119/10

### COUNSELING DOCUMENTED:

☐ VERBAL ONLY
☒ COPY OF COUNSELING GIVEN TO EMPLOYEE

① employee suggests that he works with the
craftsmen.
②. He was offered to get paid for (the Stuart Apt.)
by Roy.

MANAGER'S SIGNATURE: Caunen Colon / Maggie H Slarter

EMPLOYEE'S SIGNATURE:
(If Applicable)

☐ Employee Refused to Sign _____ (Initials)

③ Employee states that he helps the employee's
& the plumber when he comes to the building
Mueller

FILE

| DISCIPLINARY COUNSELING FORM |

EMPLOYEE NAME: PEDRO CANCIA TODAY'S DATE: 10/30/08

DEPT/LOCATION: 2770-80 Kingshridge TERRACE

**REASON FOR COUSELING:**

X LACK OF COMMUNICATION
X WORKS TOO SLOW, LEAVES WORK FOR HELPER.
X BE RESPONSIVE TO OFFICE AND TENANTS.

DETAILS OF SITUATION:
• FAILURE TO COMMUNICATE W/MGRS. WHEN HPD OR other VISTORS show up AT Building
X FAILURE TO FOLLOW DIRECTIVE - EXE MS. STEWARTS RELOCATION project.
• COMPLAINTS FROM TENANT'S - NOT RESPONSIVE TO THEIR NEEDS
STEPS NEEDED TO TAKE TO IMPROVE/CORRECT SITUATION:

X REPLACE W/NEW PROACTIVE SUPER

NEXT ACTION TO BE TAKEN IF NOT CORRECTED:

☐ To be determined at management's discretion
☐ Immediate Termination

COUNSELING DOCUMENTED:

☐ VERBAL ONLY
☐ COPY OF COUNSELING GIVEN TO EMPLOYEE

① employee suggests that he works with the
craftsmen.
② He was offered to get paid for (the Stuart Apt.)
by Roy.

MANAGER'S SIGNATURE: Carmen Colon / Maggie

EMPLOYEE'S SIGNATURE:
(If Applicable)

☐ Employee Refused to Sign _____ (Initials)

③ Employee states that he helps the employee's
& the plumber when he comes to the building

| DISCIPLINARY COUNSELING FORM |
|---|

EMPLOYEE NAME: *Peter Rodriguez* _____ TODAY'S DATE: 5-6-08

DEPT/LOCATION: 75 W 190ST

☐ FILE

REASON FOR COUSELING:

X INSUBORDINATION
X ATTITUDE AND FOUL LANGUAGE TOWARD CO-WORKERS AND TENANTS
X THREATS OF VIOLENCE TOWARD MANAGER.
X NOT INFORMING OFFICE OF PARTY IN APT 1H (VACANT) OF WHICH HE WAS
I ACCUSED OF THROWING.

DETAILS OF SITUATION:

X ARE ATTACHED

STEPS NEEDED TO TAKE TO IMPROVE/CORRECT SITUATION:

X DISCHARGE

NEXT ACTION TO BE TAKEN IF NOT CORRECTED:

☑ To be determined at management's discretion (RECOMMENDED SUSPENSION 5 DAYS).
☐ Immediate Termination

COUNSELING DOCUMENTED:

☐ VERBAL ONLY
☐ COPY OF COUNSELING GIVEN TO EMPLOYEE

MANAGER'S SIGNATURE: *Kay Brice*

EMPLOYEE'S SIGNATURE: *refused to sign*
(If Applicable)
☐ Employee Refused to Sign _____ (Initials)

---

## INCIDENT REPORT

☐ Please keep Confidential on File Only
☐ Feel free to Share as Reasonably Needed

YOUR NAME: _Roy Brice_                     TODAY'S DATE: _5·6·08_

COMPANY/LOCATION: _665 Pelham Parkway North_

ANY OTHER POTENTIAL WITNESSES:_____

DATE (OR DATE RANGE) OF INCIDENT(S): _____

FACTS OF THE INCIDENT(S):

*Please description the physical location, date, time, surroundings and witnesses and all material facts involved.*

TENANTS HAD MAKE CALLS AND CONTRACTOR WHO RENOVATED APT 1H HAD SAID THAT SOMEONE HAD THROW A PARTY IN THE NEWLY RENOVATED APT SOME SAY THE SUPER RENTED THE APARTMENT OUT FOR A PARTY I KNOW THAT WHEN I GO INTO AN EMPTY APT WITH MY WORKERS THE FIRST THING DONE IS SECURE ALL WINDOWS BY BOLTING THEM SHUT. THERE WAS NO OTHER WAY IN EXCEPT THE FRONT DOOR. WHEN I CALLED THE SUPER HE SAID THEY MUST HAVE CAME IN THROUGH THE WINDOWS. I TOLD EDD + RAY ABOUT THIS AND THEY WERE IN AGREEMENT WITH ME TO WRITE HIM UP. THE OFFICE SAYS ITS BEEN OVER A WEEK AND PETE HAS STILL NOT INFORMED US.

*(Please attach additional sheet if needed)*

The above stated facts are true and complete to the best of my knowledge. I understand that my request for confidential only applies if governing laws do not prevail.

_Roy Brice_                     _5·6·08_
Signature                        Date

| INCIDENT REPORT |
|---|

☐  Please keep Confidential on File Only
☐  Feel free to Share as Reasonably Needed

YOUR NAME: _Roy Bruce_ _____ TODAY'S DATE: __5·6·08__

COMPANY/LOCATION: _665 Pelham Parkway North_ _____

ANY OTHER POTENTIAL WITNESSES: _ELIZABETH PEREZ (TENANT)_

_ADT, IC._ _____

DATE (OR DATE RANGE) OF INCIDENT(S): _____

FACTS OF THE INCIDENT(S):

*Please description the physical location, date, time, surroundings and witnesses and all material facts involved.*

_MORE THAN TWO TENANTS HAVE TOLD ME AND ONE CAME TO_
_THE OFFICE AND HAVE TOLD ME THAT THE SUPER (PETE) HAS_
_THREATENED TO HAVE HIS WIFE COME TO THERE APTS_
_AND BEAT THEM UP. THIS ACCUSATION HAS BEEN MADE_
_TO ME BY SEVERAL TENANTS_
_____
_____
_____
_____
_____
_____

*(Please attach additional sheet if needed)*

The above stated facts are true and complete to the best of my knowledge. I understand that my request for confidential only applies if governing laws do not prevail.

_Roy Bruce_ _____          __5·6·08__
Signature                                  Date

| INCIDENT REPORT |
|---|

☐ Please keep Confidential on File Only
☐ Feel free to Share as Reasonably Needed

YOUR NAME: <u>Roy Brice</u>                    TODAY'S DATE: <u>5·6·08</u>

COMPANY/LOCATION: <u>665  Pelham Parkway North</u>

ANY OTHER POTENTIAL WITNESSES: <u>Ray Radparvar , Marcos</u>
<u>Rivera.</u>

DATE (OR DATE RANGE) OF INCIDENT(S): <u>5·5·08</u>

FACTS OF THE INCIDENT(S):

*Please description the physical location, date, time, surroundings and witnesses and all material facts involved.*

<u>I SAYS TO HIM OKAY YOUR SUSPENDED FOR A MONTH. HE SAYS</u>
<u>YOUR NOTHING BUT A POTHEAD MOTHERF_____ YOUR AN ASS.</u>
<u>I TOLD HIM TO GO TO THE OFFICE. HE SAYS I'M NOT GOING ANY</u>
<u>WHERE. F___ YOU. HE THEN APPROACHED ME AS IF TO HIT ME AND</u>
<u>SAID YEAH AND WHAT THE F___ F___ YOU GONNA DO ABOUT IT.</u>

_____
_____
_____
_____
_____
_____

*(Please attach additional sheet if needed)*

The above stated facts are true and complete to the best of my knowledge. I understand that my request for confidential only applies if governing laws do not prevail.

<u>Roy Brice</u>                    <u>5·6·08</u>
Signature                        Date

---

| INCIDENT REPORT |
| --- |

☐ Please keep Confidential on File Only
☐ Feel free to Share as Reasonably Needed

YOUR NAME: _Roy Brice_          TODAY'S DATE: _5·6·08_

COMPANY/LOCATION: _665 PELHAM PARKWAY NORTH_

ANY OTHER POTENTIAL WITNESSES: _Ray Raddarvar, Jose Mendez,_

_Marco Rivera, Augstin Perez, TENANT IN APT 4F_

DATE (OR DATE RANGE) OF INCIDENT(S): _5·4·08_

FACTS OF THE INCIDENT(S):

*Please description the physical location, date, time, surroundings and witnesses and all material facts involved.*

I WAS INSPECTING A JOB (SEC 8) AT 2505 AQUEDUCT AN APT
4F AND SHOWING RAY WHAT TO LOOK FOR AND HOW TO INSPECT
CERTAIN JOBS WHEN AUGUSTIN PEREZ MADE A COMMENT
ABOUT A JOB THAT WAS NOT DONE PROPERLY. HE SAYS THIS
JOB IS A ~~XXXXX~~ MESSED UP JOB THIS IS HORRIBLE!"
PETE (SUPER) OVERHEARD THE COMMENT AND BEGAN TO CURSE
AT THE CRAFTMAN SAYING HEY IF YOU CAN DO A BETTER JOB
THEN YOU F_____ DO IT. COMING OVER HERE WITH THAT MUSLIM
SH-T GO F___ YOURSELF YOU MOTHER F_____ WITH THAT MUSLIM
SH-T.

*(Please attach additional sheet if needed)*

The above stated facts are true and complete to the best of my knowledge. I understand that my request for confidential only applies if governing laws do not prevail.

_____          _5·6·08_

Signature                                Date



Pedro Canelas
NY

## INCIDENT REPORT

FILE

☐ Please keep Confidential on File Only
☐ Feel free to Share as Reasonably Needed

YOUR NAME: Ray Brice                          TODAY'S DATE: 5·6·08

COMPANY/LOCATION: 665 Pelham Park Way North

ANY OTHER POTENTIAL WITNESSES: Ray Radparvar, Marcos Rivera.

DATE (OR DATE RANGE) OF INCIDENT(S): 5·5·08·

FACTS OF THE INCIDENT(S):

*Please description the physical location, date, time, surroundings and witnesses and all material facts involved.*

ON FRIDAY·2·08 AT APPROXIMATLY 4:30 PM I WAS NOTIFIED ABOUT A SEC.8· INSPECTION TO TAKE PLACE AT 75 W 190 APT 1H. I CALLED PETE (SUPER) TO CLEAN OUT APT 1H. HE SAID YES OKAY I'LL DO IT. INSPECTION TOOK PLACE SAT·3·08 AND DIDN'T PASS INSPECTION WHILE HE WAS THERE BECAUSE OF A WINDOW GUARD, BATT FOR SMOKE DETECTOR AND SOME OF THE THINGS LEFT IN THE APT. MON·5·08 I WENT TO THE APT AND NOTICED THAT NOTHING WAS DONE. RAY AND I WERE DISAPPOINTED AT THE SITE. I CALLED PETE AND TOLD HIM THAT THE NEXT TIME I ASK HIM TO DO A SIMPLE JOB AND HE DOESN'T DO IT AFTER SAYING HE WOULD CONSIDER HIMSELF SUSPEND° FOR TWO (2) DAYS. HE DIDN'T ANSWER ME BACK ON THE RADIO. 3 MINUTE LATER HE CAME BARGING INTO APT 1H CURSING AT ME AND SCREAMING WHY DON'T YOU MAKE IT A WHOLE F_____ MONTH YOU MOTHER F_____.

*(Please attach additional sheet if needed)*

The above stated facts are true and complete to the best of my knowledge. I understand that my request for confidential only applies if governing laws do not prevail.

Ray Brice                                      5·6·08
Signature                                       Date

## EMPLOYEE INFORMATION

| Name | | | | Effective Date |
|------|--|--|--|----------------|
| Pedro Canelas Rodriguez | | | | 1/5/09 |

| Department | Job Title | | Original Date of Hire | Work Location |
|------------|-----------|--|-----------------------|---------------|
| | Superintendent | | | |

## NEW HIRE - REHIRE - REINSTATE

| | New Position (check if applicable) | Replacement Position (check if applicable) | Note the name of ee being replaced in the comment section below |
|--|--|--|--|

| Work Status | Date of Hire | Rate of Pay | Per: Hour/Month/Year |
|-------------|--------------|-------------|----------------------|
| Full Time | Date of Birth | Social Security | (circle one) |
| Part Time | | | Exempt / Non-Exempt |
| Intern | | | |
| Temporary | Street Address | City, State, Zip | |
| Hours Per Week: | | | |
| | Home Phone | Cell Phone | |

## CHANGE

| Type of Change | From | To | $ Amt of Change | % | Reason for Change |
|----------------|------|----|-----------------|----|-------------------|
| Salary | | | | | |
| Date of last pay increase & Amount of Change | | | | | Formal Review Done? |
| Commissions | | | | | |
| Bonus | | | | | |
| Job Title | | | | | |
| Department | | | | | |
| Work Location | | | | | |
| Work Status | | | | | |
| Employee Classification | | | | | |
| Personal Information | Address: | | | | Phone Number: |

DEFENDANT'S EXHIBIT E 1/19/10

## TEMPORARY LEAVE REQUEST

| | | | |
|--|--|--|--|
| Vacation Leave with Pay | | Bereavement | |
| Sick Leave With Pay | | Jury Duty | |
| Medical/Disability (non work related) | | Business Trip (paid) | |
| Work Injury | | Leave without Pay | |
| List Dates: | From:        To: | | Total Number of Working Days |

## TERMINATION

| LAST DAY WORKED. | Voluntary | No Reason Given | | CHARACTER OF SERVICE |
|------------------|-----------|-----------------|--|----------------------|
| 1/2/09 | Involuntary (circle one) | Change in Residence | | Satisfactory / Unsatisfactory |
| | | To Accept Another Position | Work | ✓ |
| | | ✓ Unsatisfactory Job Performance | Responsibility | ✓ |
| ELIGIBLE FOR REHIRE? | | Final Disciplinary Action | Conduct | ✓ |
| Yes | ✓ Request Final Pay | Layoff | Ability | ✓ |
| No | | Other: | Attendance | ✓ |

ADDITIONAL COMMENTS/INSTRUCTIONS:
Pedro was given opportunities to take ownership
of the property. It was decided that his performance

| Employee Signature: un satisfactory | Supervisor Signature: | Date: 1/2/09 |
|------|------|------|
| See -email | | |
| Owner Signature        Date: | HR Signature: | Date: |

2007

# EXHIBIT  F



**Milbank**
**Real Estate**

January 13, 2009

<u>Via Overnight Mail</u>

Pedro Canela Rodriguez
2770 Kingsbridge Terrace, #1B
Bronx, NY 10463

Re:    <u>Termination of Employment</u>
        Date of Termination: 1/2/09

Dear Mr. Canela Rodriguez:

This letter is to confirm the termination of your employment as referenced above.

Your final paycheck and The Record of Employment is enclosed. You should take the Record of Employment with you to file for unemployment benefits.

For W2 purposes, please keep us informed of an address change.

If you have any questions regarding your final pay or status of your employment, please contact me at your convenience.

Sincerely,

Monica Vasquez
Human Resources Manager

Enclosure(s)

Investments

Development

Brokerage

Property
Management

Asset
Management

660 S. Figueroa

24th Floor

Los Angeles, California

90017-3707

213.403.1400 tel

213.403.1440 fax

www.milbankRE.com

DEFENDANT'S
EXHIBIT
C

# EXHIBIT 3

%AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

Pedro Canela-Rodriguez on his own behalf and
on behalf of others similarly situated

**SUMMONS IN A CIVIL ACTION**

V.

Milbank Real Estate, and Frieda Rodriguez, an
individual

CASE NUMBER: CV

09 CV 6588

JUDGE RAKOFF

TO: (Name and address of Defendant)

Milbank Real Estate
665 Pelham Pkway North, Suite 102 Bronx, NY 10467
Frieda Rodriguez
665 Pelham Pkway North, Suite 102 Bronx, NY 10467
Milbank Real Estate
660 S. Figueroa 24th Fl. Los Angeles, Ca 90017

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Helen Dalton and Associates, P.C.
69-12 Austin St.
Forest Hills, NY 11375

an answer to the complaint which is served on you with this summons, within       20       days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

JUL 2 4 2009

J. MICHAEL McMAHON

| CLERK | DATE |
|---|---|

(by) DEPUTY CLERK

JUDGE RAKOFF

JS 44C/SDNY
REV. 1/2008

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Pedro Canela-Rodriguez on his own behalf and on the behalf of others similarly situated | Milbank Real Estate and Frieda Rodriguez, an individual |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Helen Dalton and Associates, P.C.   718.263.9591<br>69-12 Austin St. Forest Hills NY 11375 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Fair Labor Standards Act

RECEIVED
JUL 24 2009
U.S.D.C. S.D.N.Y.
CASHIERS

Has this or a similar case been previously filed in SDNY at any time? No? ☑ Yes? ☐   Judge Previously Assigned _____ & Case No.

If yes, was this case Vol.☐  Invol. ☐   Dismissed. No☐  Yes ☐   If yes, give date _____

*(PLACE AN [x] IN ONE BOX ONLY)*          NATURE OF SUIT

TORTS                    ACTIONS UNDER STATUTES

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | | [ ] 620 OTHER FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY | | [ ] 430 BANKS & BANKING |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | 21 USC 881 | PROPERTY RIGHTS | [ ] 450 COMMERCE |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | | [ ] 630 LIQUOR LAWS | [ ] 820 COPYRIGHTS | [ ] 460 DEPORTATION |
| | [ ] 345 MARINE PRODUCT LIABILITY | PERSONAL PROPERTY | [ ] 640 RR & TRUCK | [ ] 830 PATENT | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 151 MEDICARE ACT | [ ] 350 MOTOR VEHICLE | [ ] 370 OTHER FRAUD | [ ] 650 AIRLINE REGS | [ ] 840 TRADEMARK | |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 371 TRUTH IN LENDING | [ ] 660 OCCUPATIONAL SAFETY/HEALTH | | [ ] 480 CONSUMER CREDIT |
| | [ ] 360 OTHER PERSONAL INJURY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | [ ] 690 OTHER | SOCIAL SECURITY | [ ] 490 CABLE/SATELLITE TV |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | LABOR | [ ] 861 HIA (1395ff) | [ ] 810 SELECTIVE SERVICE |
| | | | X 710 FAIR LABOR STANDARDS ACT | [ ] 862 BLACK LUNG (923) | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 160 STOCKHOLDERS SUITS | | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 190 OTHER CONTRACT | | | | [ ] 864 SSID TITLE XVI | |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | [ ] 865 RSI (405(g)) | [ ] 890 OTHER STATUTORY ACTIONS |
| [ ] 196 FRANCHISE | | | [ ] 740 RAILWAY LABOR ACT | FEDERAL TAX SUITS | [ ] 891 AGRICULTURAL ACTS |
| | | | [ ] 790 OTHER LABOR LITIGATION | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 892 ECONOMIC STABILIZATION ACT |
| | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 791 EMPL RET INC SECURITY ACT | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 893 ENVIRONMENTAL MATTERS |
| REAL PROPERTY | [ ] 441 VOTING | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | | | [ ] 894 ENERGY ALLOCATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 442 EMPLOYMENT | | IMMIGRATION | | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 220 FORECLOSURE | [ ] 443 HOUSING/ ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | | | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | [ ] 462 NATURALIZATION APPLICATION | | |
| [ ] 240 TORTS TO LAND | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 540 MANDAMUS & OTHER | [ ] 463 HABEAS CORPUS-ALIEN DETAINEE | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 550 CIVIL RIGHTS | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 440 OTHER CIVIL RIGHTS | [ ] 555 PRISON CONDITION | [ ] 465 OTHER IMMIGRATION ACTIONS | | |

Check if demanded in complaint:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 150,000.00   OTHER _____

Check YES only if demanded in complaint
JURY DEMAND: ☑ YES ☐ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____   DOCKET NUMBER_____

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

*(PLACE AN x IN ONE BOX ONLY)*                                              **ORIGIN**

☑ 1 Original    ☐ 2a. Removed from   ☐ 3 Remanded from   ☐ 4 Reinstated or    ☐ 5 Transferred from   ☐ 6 Multidistrict    ☐ 7 Appeal to District
Proceeding          State Court          Appellate Court          Reopened          (Specify District)          Litigation          Judge from
               ☐ 2b. Removed from                                                                                              Magistrate Judge
                     State Court AND                                                                                           Judgment
                     at least one
                     party is pro se.

*(PLACE AN x IN ONE BOX ONLY)*              **BASIS OF JURISDICTION**                    *IF DIVERSITY, INDICATE*
☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☑ 3 FEDERAL QUESTION   ☐ 4 DIVERSITY          *CITIZENSHIP BELOW.*
                                           (U.S. NOT A PARTY)                            *(28 USC 1322, 1441)*

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Pedro Canela-Rodriguez
411 W. 128th St. Apt. 22
New York, NY 10027

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)
Milbank Real Estate and Frieda Rodriguez
665 Pelham Pkway North
Bronx, New York 10467

Milbank Real Estate
660 S. Figueroa 24th Fl.
Los Angeles, Ca 90017

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:   ☐ WHITE PLAINS ·   ☑ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION.)

DATE 2/6/09 SIGNATURE OF ATTORNEY OF RECORD                    ADMITTED TO PRACTICE IN THIS DISTRICT
                                                               [ ] NO
RECEIPT #                                                      ☑ YES (DATE ADMITTED Mo. 07· Yr. 2007 )
                                                               Attorney Bar Code # RA5508

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ Is so Designated.

J. Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

JUDGE RAKOFF

09 CV 6588

RECEIVE

JUL 24 2009

U.S.D.C. S.D. N.Y.
CASHIERS

Helen F. Dalton & Associates, PC
Roman Avshalumov (RA5508)
69-12 Austin Street
Forest Hills, NY 11375
Telephone: 718-263-9591

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
PEDRO CANELA-RODRIGUEZ, on his own behalf
and on the behalf of others similarly situated.

                          Plaintiff,                    COMPLAINT

-against-                                               JURY TRIAL
                                                       DEMANDED

MILBANK REAL ESTATE, and
FRIEDA RODRIGUEZ an individual,

                          Defendants.
--------------------------------------------------------------X

1. Plaintiffs, PEDRO CANELA-RODRIGUEZ (hereinafter referred to as
   "Plaintiff"), by his attorneys at Helen F. Dalton & Associates, PC, allege,
   upon personal knowledge as to himself and upon information and belief as to
   other matters, as follows:

## PRELIMINARY STATEMENT

2. Plaintiff, PEDRO CANELA-RODRIGUEZ through undersigned counsel,
   brings this action against MILBANK REAL ESTATE, and FRIEDA
   RODRIGUEZ an individual (collectively, "Defendants"), to recover damages
   for egregious violations of federal and state minimum wage and overtime laws
   arising out of Plaintiff's employment at MILBANK REAL ESTATE located
   at 665 Pelham Pkway North, Bronx, NY 10467.

3. Plaintiff PEDRO CANELA-RODRIGUEZ was employed by Defendants to
   work as Maintenance at one of the buildings managed by MILBANK REAL
   ESTATE from approximately November 8th, 2007 until his employment was

1

terminated on January 5th, 2009. Although Plaintiff PEDRO CANELA-RODRIGUEZ worked approximately one hundred and five (105) hours or more per week during the period of November 8th, 2007 through January 5th, 2009, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the Fair Labor Standards Act ("FLSA") and New York Labor Law.

4. As a result of these violations of Federal and New York State labor laws, Plaintiff seeks compensatory damages and liquidated damages in an amount exceeding $100,000. Plaintiff also seeks interest, attorney's fees, costs, and all other legal and equitable remedies this Court deems appropriate.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the FLSA, 29 U.S.C. §216 and 28 U.S.C. §1331.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in the Southen District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 & 2202.

## THE PARTIES

9. Plaintiff, PEDRO CANELA_RODRIGUEZ, resides at 411 W. 128th St. Apt. 22, in New York County, New York and was employed by Defendants at MILBANK REAL ESTATE in New York, New York from on or about November 8th, 2007 until January 5th, 2009.

10. Upon information and belief, Defendants, MILBANK REAL ESTATE is a corporation organized under the laws of New York with a principal executive office at 660 S. Figueroa 24th. Fl. Los Angeles, California 90017.

2

11. Upon information and belief, Defendants, MILBANK REAL ESTATE is a corporation authorized to do business under the laws of New York.

12. Upon information and belief, Defendant FRIEDA RODGRIGUEZ, owns and/or operates MILBANK REAL ESTATE that does business under the name "MILBANK REAL ESTATE" at 665 Pelham Pkway North, Bronx, NY 10467.

13. Upon information and belief, Defendant Defendants FRIEDA RODRIGUEZ, is the Chairman of the Board of MILBANK REAL ESTATE.

14. Upon information and belief, Defendant FRIEDA RODRIGUEZ , is the Chief Executive Officer of MILBANK REAL ESTATE.

15. Upon information and belief, Defendant FRIEDA RODRIGUEZ, is an agent of MILBANK REAL ESTATE.

16. Upon information and belief, Defendant FRIEDA RODRIGUEZ, has power over personnel decisions.

17. Upon information and belief, Defendant FRIEDA RODRIGUEZ, has power over payroll decisions.

18. Defendant FRIEDA RODRIGUEZ has the power to hire and fire employees at the MILBANK REAL ESTATE establish and pay their wages, set their work schedule, and maintains their employment records.

19. During relevant times, Defendant FRIEDA RODRIGUEZ, was Plaintiff's employer within the meaning of the FLSA and New York Labor Law.

20. On information and belief, MILBANK REAL ESTATE is at present and has been at all times relevant to the allegation in the complaint, an enterprise engaged in interstate commerce within the meaning of the FLSA in that the entity (i) has had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person: and (ii) has had an annual gross volume of sales of not less than $500.000.

3

## STATEMENT OF FACTS

21. Plaintiff, PEDRO CANELA RODRIGUEZ, was employed by Defendants at the MILBANK REAL ESTATE in Bronx, New York, between approximately November 8th, 2007 – January 5th, 2009.

22. During his employment by Defendants at MILBANK REAL ESTATE Plaintiff's primary duties were working installing kitches, bathrooms and floors and performing other miscellaneous duties as directed by supervisors and managers.

23. Defendants usually created work schedule, requiring Plaintiff Pedro Canela Rodriguez to work well more than forty (40) hours per week.

24. Plaintiff, PEDRO CANELA-RODRIGUEZ, was employed by Defendants to work installing kitches, bathrooms, and floors, between approximately November 8th, 2007 until his employment was terminated on January 5th, 2009. Although Plaintiff worked approximately one hundred and five (105) hours or more per week during the period of November of 2007 through January of 2009, Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the Fair Labor Standards Act ("FLSA") and New York Labor Law.

25. In fact, the schedule created by Defendants required Plaintiff to work approximately one hundred and five (105) hours per week.

26. Despite the long hours that Plaintiff PEDRO CANELA-RODRIGUEZ worked for Defendants, Defendants did not pay Plaintiff the required minimum wage from November 8th, 2007 to January 5th, 2009.

27. At all relevant times, both Federal and New York State law have required Defendants to pay Plaintiff overtime wages at a wage rate of one and a half (1.5) times his regular rate for hours worked in excess of forty (40) hours per week.

28. During many or all weeks in which Plaintiff PEDRO CANELA-RODRIGUEZ was employed by Defendants, Plaintiff worked in excess of forty (40) hours per week.

4

29. Defendants did not pay Plaintiff PEDRO CANELA-RODRIGUEZ for his services and labor at a rate that is one and a half (1.5) times the minimum wage, the minimum regular rate of pay to which Plaintiff is entitled for all hours worked over forty (40) in a workweek.

30. At all relevant times, the FLSA, 29 U. S. C. §206 has required Defendants to pay Plaintiff a minimum wage of $5.15 per hour.

31. At all times, the New York Minimum Wage Act, New York Labor Law §652 had required Defendants to pay Plaintiff minimum wages of $7.15 an hour.

32. Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the restaurant as required by both NYLL and the FLSA.

33. Upon information and belief, Defendants willfully failed to keep payroll records as required by both NYLL and the FLSA.

34. Defendants willfully violated Plaintiff's rights by failing to pay Plaintiff an additional hour of pay at a minimum wage for each day worked more than ten (10) hours, in violation of the New York Minimum Wage Act.

## FIRST CAUSE OF ACTION

### Minimum Wages Under The Fair Labor Standards Act

35. Plaintiff re-alleges and incorporated by reference all allegations in all preceding paragraphs.

36. Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

37. At all times relevant to this action, Plaintiff was engaged in commerce or the production of services and goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

38. At all times relevant to this action, Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

39. Defendants willfully failed to pay Plaintiff(s) minimum wage in accordance with 29 U.S.C . §§201, 202 and 203.

5

40. Defendants' violations of the FLSA, as described in this Complaint have been willful and intentional. Defendants have not made a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff.

41. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION

### Minimum Wages Under New York Labor Law

42. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

43. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§2 and 651.

44. At all times relevant to this action, Defendants were employers within the meaning of New York Labor Law.

45. Defendants failed to record, credit or compensate Plaintiff the applicable minimum hourly wage, in violation of the New York Minimum Wage Act, specifically New York Labor Law §652.

46. Defendants also failed to pay Plaintiff the required minimum wage, the minimum wage rate to which Plaintiff was entitled under New York Labor Law §652, in violation of 12 N. Y. C. R. R. 137-1.3.

47. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages and an amount equal to one-quarter of his unpaid minimum wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NY Labor Law §198 (1-a).

6

### THIRD CAUSE OF ACTION

#### Overtime Wages Under The Fair Labor Standards Act

48. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

49. Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. §216 (b).

50. At all times relevant to this action, Plaintiff was engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

51. At all times relevant to this action, Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206 (a) and 207(a).

52. Defendants willfully failed to pay Plaintiff overtime wages for hours worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the minimum wage, to which Plaintiff was entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(1).

53. Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made a good effort to comply with the FLSA with respect to their compensation of Plaintiffs.

54. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, his unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216 (b).

### FOURTH CAUSE OF ACTION

#### Overtime Wages Under New York Labor Law

55. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

56. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§2 and 651.

· 7

57. Defendants failed to pay Plaintiff overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times the minimum wage, the minimum wage rate to which Plaintiff was entitled under New York Labor Law §652, in violation of 12 N.Y.C.R.R. 137-1.3.

58. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages and an amount equal to one-quarter of his unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NY Labor Law §198 (1-a).

## FIFTH CAUSE OF ACTION

### Spread of Hours Compensation Under New York Labor Law

59. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

60. Defendants willfully violated Plaintiff's rights by failing to pay Plaintiff an additional hour of pay at minimum wage for each day worked more than ten (10) hours, in violation of the New York Minimum Wage Act and its implementing regulations. N.Y. Labor Law §§ 650 et seq.; 12 N.Y.C.R.R. § 142-2.4

61. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants his unpaid spread of hour compensation, reasonable attorneys' fees, and costs of the action, pursuant to N.Y. Labor Law § 663 (1).

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that judgment be granted:

a. Declaring Defendants' conduct complained herein to be in violation of the Plaintiffs rights under the FLSA, New York Minimum Wage Act, and the New York Labor Law and its regulations;

b. Awarding Plaintiff unpaid minimum wages, overtime wages and spread of hours;

8

c. Awarding Plaintiff liquidated damages pursuant to 29 U.S.C. §216 and New York Labor Law §§198(1-a), 663(1);

d. Awarding Plaintiff prejudgment and post-judgment interest;

e. Awarding Plaintiff the costs of this action together with reasonable attorney's fees; and

f. Awarding such and further relief as this court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: This 06th day of February 2009.

Roman Avshalumov (RA 5508)
Helen F. Dalton & Associates, PC
69-12 Austin Street
Forest Hills, NY 11375
Telephone: 718-263-9591
Fax: 718-263-9598

9

# EXHIBIT  4

MARK J. WEINSTEIN, ESQ. (MW1896)
COTTO & ASSOCIATES
70 SPRING STREET
OSSINING, NEW YORK 10562
(914) 941-4077
ATTORNEYS FOR MILLBANK REAL ESTATE AND FRIEDA RODRIGUEZ

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
PEDRO CANELA-RODRIGUEZ, on his own behalf
and on the behalf of others similarly situated          **Index No.: 09 Civ. 6588**

          Plaintiff,

                    v.                          **DEFENDANT'S ANSWER**
                                                **WITH AFFIRMATIVE**
                                                **DEFENSES**

MILBANK REAL ESTATE, and FRIEDA RODRIGUEZ
and individual,

          Defendants.
-----------------------------------------------------------------------x

          Defendant MILBANK REAL ESTATE and FRIEDA RODRIGUEZ (collectively "the

defendants"), by its attorney, Mark J. Weinstein, Esq., COTTO & ASSOCIATES, for its

answer to the Complaint of PEDRO CANELA-RODRIGUEZ herein, alleges as follows:

     1. Admits upon information and belief the truth of the allegations contained in

          paragraph 1 of the Complaint.

### PRELIMINARY STATEMENT

     2. Admits that the allegations contained in paragraph 2 of the Complaint purport to

          predicate the claims in this action under federal and state minimum wage and

overtime laws, but except as so admitted, denies the allegations contained in Paragraph 2 of the Complaint.

3. Denies the allegations contained in paragraph 3 of the Complaint.

4. Admits the allegations contained in paragraph 4 of the Complaint that plaintiff seeks compensatory and liquidated damages under Federal and New York State labor laws in the amount exceeding $100,000.00, but except as so admitted denies the allegations in paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5. Admits that the allegations contained in paragraph 5 of the Complaint purport to predicate jurisdiction for plaintiff's federal claims pursuant to the FLSA, 29 U.S.C. Section 216 and 28 U.S.C. Section 1331.

6. Admits that the allegations contained in paragraph 6 of the Complaint purport to predicate jurisdiction for plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

7. Admits that the allegations contained in paragraph 7 of the Complaint purport to predicate venue in this Court under 28 U.S.C. Section 1391(c).

8. Admits that the allegations contained in paragraph 8 of the Complaint, that the Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. Sections 2201 and 2202.

## THE PARTIES

9. Admits the allegations contained in paragraph 9 of the Complaint that plaintiff lived at the referenced address, but except as so admitted, denies the allegations contained in paragraph 9 of the Complaint.

10. Admits the allegations contained in paragraph 10 of the Complaint but except as so admitted, denies the allegations contained in paragraph 10 of the Complaint that Millbank Real Estate is the defendant.

11. Admits upon information and belief the truth of the allegations contained in paragraph 11 of the Complaint.

12. Admits upon information and belief the truth of the allegations contained in paragraph 12 of the Complaint.

13. Admits upon information and belief the truth of the allegations contained in paragraph 13 of the Complaint.

14. Admits upon information and belief the truth of the allegations contained in paragraph 14 of the Complaint.

15. Admits upon information and belief the truth of the allegations contained in paragraph 15 of the Complaint.

16. Admits upon information and belief the truth of the allegations contained in paragraph 16 of the Complaint.

17. Admits upon information and belief the truth of the allegations contained in paragraph 17 of the Complaint.

18. Admits upon information and belief the truth of the allegations contained in paragraph 18 of the Complaint.

19. Denies the allegations contained in paragraph 19 of the Complaint.

20. Admits upon information and belief the truth of the allegations contained in paragraph 20 of the Complaint.

## STATEMENT OF FACTS

21. Denies the allegations contained in paragraph 21 of the Complaint.

22. Admits the allegations contained in paragraph 22 of the Complaint that plaintiff installed kitchens, bathrooms, and floors, but except as so admitted, denies the allegations contained in paragraph 22 of the Complaint.

23. Denies the allegations contained in paragraph 23 of the Complaint.

24. Admits the allegations contained in paragraph 24 of the Complaint that plaintiff installed kitchens, bathrooms, and floors, but except as so admitted, denies the allegations contained in paragraph 24 of the Complaint.

25. Denies the allegations contained in paragraph 25 of the Complaint.

26. Denies the allegations contained in paragraph 26 of the Complaint.

27. Admits the allegations contained in paragraph 27 of the Complaint that Federal and New York State law require overtime wages at a wage rate of one and half times the regular rate, but except as so admitted, denies the allegations contained in paragraph 27 that defendants are required to pay plaintiff overtime wages.

28. Denies the allegations contained in paragraph 28 of the Complaint.

29. Denies the allegations contained in paragraph 29 of the Complaint.

30. Admits the allegations contained in paragraph 30 of the Complaint that FLSA 29 U.S.C. Section 206 that requires defendants to pay employees minimum wage.

- 4 -

31. Admits the allegations contained in paragraph 31 of the Complaint that New York State Labor Law requires defendants to pay employees minimum wage.

32. Denies the allegations contained in paragraph 32 of the Complaint.

33. Denies the allegations contained in paragraph 33 of the Complaint.

34. Denies the allegations contained in paragraph 34 of the Complaint.

### FIRST CAUSE OF ACTION
### (Minimum Wages Under The Fair Labor Standards Act)

35. Repeats, realleges and incorporates by reference each and every response to the allegations contained in paragraphs 1 through 34 of the Complaint, in response to paragraph 35, as if fully set forth herein.

36. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint.

37. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint.

38. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

39. Denies the allegations contained in paragraph 39 of the Complaint.

40. Denies the allegations contained in paragraph 40 of the Complaint.

41. Denies the allegations contained in paragraph 41 of the Complaint.

### SECOND CAUSE OF ACTION
### (Minimum Wages Under New York State Labor Law)

42. Repeats, realleges and incorporates by reference each and every response to the allegations contained in paragraphs 1 through 41 of the Complaint, in response to paragraph 42, as if fully set forth herein.

43. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint.

44. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint.

45. Denies the allegations contained in paragraph 45 of the Complaint.

46. Denies the allegations contained in paragraph 46 of the Complaint.

47. Denies the allegations contained in paragraph 47 of the Complaint.

### THIRD CAUSE OF ACTION
### (Overtime Wages Under The Fair Labor Standards Act)

48. Repeats, realleges and incorporates by reference each and every response to the allegations contained in paragraphs 1 through 47 of the Complaint, in response to paragraph 48, as if fully set forth herein.

49. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the Complaint.

50. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the Complaint.

51. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint.

52. Denies the allegations contained in paragraph 52 of the Complaint.

53. Denies the allegations contained in paragraph 53 of the Complaint.

54. Denies the allegations contained in paragraph 54 of the Complaint.

## FOURTH CAUSE OF ACTION
### (Overtime Wages Under New York Labor Law)

55. Repeats, realleges and incorporates by reference each and every response to the allegations contained in paragraphs 1 through 54 of the Complaint, in response to paragraph 55, as if fully set forth herein.

56. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56 of the Complaint.

57. Denies the allegations contained in paragraph 57 of the Complaint.

58. Denies the allegations contained in paragraph 58 of the Complaint.

## FIFTH CAUSE OF ACTION
### (Spread of Hours Compensation Under New York Labor Law)

59. Repeats, realleges and incorporates by reference each and every response to the allegations contained in paragraphs 1 through 58 of the Complaint, in response to paragraph 59, as if fully set forth herein.

60. Denies the allegations contained in paragraph 60 of the Complaint.

61. Denies the allegations contained in paragraph 61 of the Complaint.

## DEMAND FOR RELIEF

The "WHEREFORE" paragraphs which immediately follow paragraph 61 of the Complaint state a demand for relief to which no responsive pleading is required but, should a response be required, defendants deny that the plaintiff is entitled to any relief.

## THE FIRST AFFIRMATIVE DEFENSE

The defendant has acted at all times in good faith compliance with the Fair Labor Standards Act and New York State labor laws.

## THE SECOND AFFIRMATIVE DEFENSE

The overtime and minimum wage provisions of the Fair Labor Standards Act and the New York State labor law do not apply because plaintiff was paid more than minimum wage, worked only a forty (40) hour work week, and did not work overtime.

## THE THIRD AFFIRMATIVE DEFENSE

Plaintiff is exempt from the requirements of the Fair Labor Standards Act and the New York State labor law in that plaintiff was a salaried employee, supervised employees, and acted in a managerial capacity.

## THE FOURTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## THE FIFTH AFFIRMATIVE DEFENSE

The claims are barred, in whole or in part, by the principles of waiver and/or estoppel.

## THE SIXTH AFFIRMATIVE DEFENSE

The plaintiff, by gross negligence and/or acts of omissions have identified and named the wrong parties in this action, as plaintiff did not work for defendants.

WHEREFORE, defendants deny that plaintiff is entitled to any relief and requests that this case be dismissed and it be awarded its costs and attorneys fees.

Dated: October 19, 2009
Ossining, New York

Respectfully submitted,

DEFENDANTS

By: *Mark J. Newsten by SWC*

Mark J. Weinstein, Esq. (MW1896)
COTTO & ASSOCIATES
70 Spring Street
Ossining, New York 10562
(914) 941-4077

To: Helen F. Dalton & Associates, PC
Roman Avshalumov (RA5508)
69-12 Austin Street
Forest Hills, NY 11375
(718) 263-9591

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

PEDRO CANELA-RODRIGUEZ,

                    Plaintiff,

                                   **DEFENDANTS RULE 56.1
                                   STATEMENT OF MATERIAL
                                   FACTS**

    - against -

                                     **INDEX NO. 09 CIV6588 (JSR)**

MILBANK REAL ESTATE, and FRIEDA
RODRIGUEZ,

                    **Defendants.**

-----------------------------------------------------------------x

### DEFENDANTS' RULE 56.1 STATEMENT

      Defendants, by and through their attorneys, Cotto & Associates, submits the following statement of material facts of which there is no genuine issue to be tried pursuant to Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York in support of Defendants' Motion for Summary Judgment.

      1. Plaintiff worked for defendant Milbank starting on or about November 8, 2007.  (Radparvar Aff, Paragraph 3) (Plaintiff Dep. 19:22-23.).

      2. Plaintiff was hired as an employee at-will by Defendant Milbank.  (Radparvar Aff. Paragraph 10 & Exhibit D) (Plaintiff Dep. 55:24-25; 56:1-5.).

      3. Plaintiff was hired as a building superintendent. (Radparvar Aff. Paragraph 4) (Plaintiff Dep. 23:7.).

      4. Defendants' building was residential. (Radparvar Aff. Paragraph 3).

5.  Plaintiff was paid a salary of $500.00 per week, which averaged $12.50 per hour, more than minimum wage. (Radparvar Aff. Paragraph 7 & Exhibit B).

6.  Plaintiff was required to work a "normal" job, five days a week, starting at 8:00 a.m. in the morning to 4:00 p.m. (Radparvar Aff. Paragraph 7 & Exhibit C) (Plaintiff Dep. 24:15-19; 49:21-25.).

7.  Plaintiff signed timesheets indicating that he worked five (5) days a week, with weekends and holidays off. (Radparvar Aff. Paragraph 9 & Exhibit C).

8.  Plaintiff received a salary.  (Radparvar Aff. Paragraph 7 & Exhibit B) (Plaintiff Dep. 23:13-17.).

9. Plaintiff was responsible for two (2) of defendant Milbank's buildings: 2770 and 2780 Kingsbridge Terrace in the Bronx, New York. (Radparvar Aff. Paragraph 4) (Plaintiff Dep. 27:10-18).

10.  Plaintiff lived for a year at 2770 Kingsbridge rent free.  (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:10-12).

11.  Plaintiff was not required to pay electricity on the rent-free apartment and had a company phone free of charge. (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:23).

12.  Plaintiff lived in a two-bedroom apartment with an estimated rental value of one thousand dollars ($1000.00) per month. (Radparvar Aff. Paragraph 8).

13.  The value of the electricity and the phone was an estimated fifty ($50.00) per month, for each month respectively. (Radparvar Aff. Paragraph 8).

14.  As part of plaintiff's duties as a superintendant, he supervised at least two (2) porters.  (Radparvar Aff. Paragraph 5) (Plaintiff Dep. 28:11-13; 29:18.).

15. Plaintiff made sure the porters finished their job requirements. (Plaintiff Dep. 28:14-16.).

16. Plaintiff reported to management the performance of the porters and made recommendations as to their status as employees of Defendant. (Radparvar Aff. Paragraph 5).

17. Plaintiff interfaced with Defendants' property manager, reporting on personnel and building matters, and interacted with tenants. (Radparvar Aff. Paragraph 5 and Exhibit A).

18. Plaintiff met with independent contractors that were hired to perform services at the Defendants' buildings, directing them to perform work. (Radparvar Aff. Paragraph 6).

19. Plaintiff maintained is own office whereby he kept records and work orders. (Radparvar Aff. Paragraph 5) (Plaintiff Dep. 33:13-16).

20. Plaintiff could not recollect and did not count the hours or the time that he purportedly worked overtime for Defendants. (Plaintiff Dep. 43:9-12; 43:16-17.).

21. Plaintiff could not articulate when he started working the 105 hours a week that he alleged in his complaint. (Plaintiff Dep. 44:15-20.).

22. Plaintiff never wrote down the hours, kept records, or provided proof of his overtime to Defendants. (Plaintiff Dep. 45:10-16; 47:7-17; 50:2-7.).

23. Plaintiff committed a series of disciplinary infractions, for which he admitted through his signature. (Radparvar Aff. Paragraph 11 & Exhibit E) (Plaintiff Dep. 60:21-23; 61:9-11).

3

24. These infractions included lack of communication with managers, including not answering the company cell phone, failure to follow directives, insubordination, threats of violence towards managers, foul language towards managers and tenants, and threatening tenants to have his wife come over to their apartment and "beat them up." (Radparvar Aff. Paragraph 12 & Exhibit E).

25. Plaintiff was terminated on January 2, 2009. (Radparvar Aff. Paragraph 13 & Exhibit F) (Plaintiff Dep. 62:1-3).

Dated: Ossining, New York
February 15, 2010

_Mark J. Weinstein_

Mark J. Weinstein

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**          **CASE NO. 09 CIV 6588**

**PEDRO CANELA-RODRIGUEZ, Plaintiff**

-against-

**MILBANK REAL ESTATE, and FRIEDA RODRIGUEZ, Defendants**

DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS

Cotto & Associates
70 Spring Street
Ossining, New York 10562
Phone (914) 941-4077
Fax (914) 941-4082

**Attorneys for Defendants**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PEDRO CANELA-RODRIGUEZ,

               Plaintiff,

                         **ECF CASE**

   - against -

                     **INDEX NO. 09 CIV6588 (JSR)**


MILBANK REAL ESTATE, and FRIEDA
RODRIGUEZ,

               Defendants.
-------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


                      COTTO & ASSOCIATES
                      *Attorneys For Defendants*

        By: _____

            Mark J. Weinstein (MW1896)
            70 Spring Street
            Ossining, New York  10562
            (914) 941-4077

# TABLE OF CONTENTS

Preliminary Statement……………………………………………………………..……1

STATEMENT OF FACTS…………………………………………………………….........2

ARGUMENT…………………………………………………………………………..........4

DEFENDANTS DID NOT VIOLATE THE FAIR LABOR
STANDARDS ACT (FLSA) AND NEW YORK STATE (NYS) LAW……………......4

   A. Standard of Review…………………………………………………………….…...4

   B. Defendants did not violate the overtime provisions of the FLSA
     & NYS Labor Law…………………………………………………………………...4

      1. Plaintiff did not make a prima facie case that he worked more
        than forty (40) hours per week………………………………………………..4

      2. Plaintiff was exempt from the provisions of the FLSA & NYS
        Labor Law because Plaintiff was a bona fide executive………....…...6

   C. Plaintiff was paid minimum wage under both the FLSA & NYS
     Labor Law…………………………………………………………………………..7

   D. Defendants did not violate the spread of hours compensation provisions
     under NYS Labor Law………………………………………………………...8

CONCLUSION………………………………………………………………………………..10

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Anderson v. Mt. Clemens Pottery Co.*,
 328 US 680, 687 (1946)……………………………………………………..5

*Busgith v. Hudson News Co.*,
 2008 NY Slip Op 31069(U) (N.Y. Sup. Ct. 4/8/2008)………………………9

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 322-23 (1986)…………………………………………………...4

*Chan v. Triple 8 Palace, Inc.*,
 No. 03 Civ. 6048(GEL), 2006 WL 851749…………………………………9

*Doo Nam Yang v. ACBL Corp.*,
 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)………………………………….5

*Masco v. E & L Transp., Inc.*,
 387 F. Supp. 2d 87, 93-94 (S.D.N.Y. 2005)…………………………………5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574, 586 (1986)……………………………………………………4

**Federal Statutes:**

Fed. R. Civ. P. 56(c)……………………………………………………………4

Fed. R. Civ. P .56(e)(2)…………………………………………………………4

29 C.F.R. § 541.1(a)-(e)………………………………………………………6

29 U.S.C. 203(m)……………………………………………………………..8

29 U.S.C. § 206………………………………………………………………7

29 U.S.C. § 207(a)(1)…………………………………………………………4

29 U.S.C. § 213(a)(1)…………………………………………………………6

**New York State Statutes:**

12 NYCRR § 142-2.14…………………………………………………………..6

12 NYCRR § 142-2.18............................................................................9

N.Y. Labor Law § 652............................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

**PEDRO CANELA-RODRIGUEZ,**

     **Plaintiff,**

             **ECF CASE**

- against -

           **INDEX NO. 09 CIV6588 (JSR)**

**MILBANK REAL ESTATE, and FRIEDA
RODRIGUEZ,**

     **Defendants.**

-----------------------------------------------------------------x

## DEFENDANTS' MEMORADUM OF LAW IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

  Plaintiff was employed by the Defendant Milbank Real Estate from approximately November 8, 2007 until his termination for cause on January 2, 2009. Plaintiff did not establish that he worked more than forty (40) hours a week to qualify for overtime, that he was not paid minimum wage under both the Fair Labor Standards Act (FLSA) and the New York State (NYS) Labor Law, and that Defendant did not violate spread of hours compensation regulations pursuant to NYS Labor Law. In addition, even were the Plaintiff to establish that he worked more than 40 hours per week, the Plaintiff was exempt under the overtime provisions of the FLSA and the NYS Labor Law under the executive exemption. Accordingly, this case should be dismissed in its entirety.

## STATEMENT OF FACTS [1]

Plaintiff was hired by the Defendant Milbank starting on or about November 8, 2007. (Radparvar Aff, Paragraph 3) (Plaintiff Dep. 19:22-23.) He was hired as an employee at-will. (Radparvar Aff. Paragraph 10 & Exhibit D) (Plaintiff Dep. 55:24-25; 56:1-5.). Plaintiff was hired as a building superintendant for two (2) buildings located at 2770 and 2780 Kingsbridge Terrace in the Bronx, New York. (Radparvar Aff. Paragraph 4) (Plaintiff Dep. 27:10-18). The building was residential. (Radparvar Aff. Paragraph 3).

Plaintiff was paid a salary of $500.00 per week, which averaged $12.50 per hour, based on a forty (40) hour workweek, more than the minimum wage. (Radparvar Aff. Paragraph 7 & Exhibit B). Plaintiff admitted when he was hired that he was paid a salary. (Plaintiff Dep. 23:13-17.). He was required to work a "normal" job, five days a week, starting at 8:00 a.m. in the morning to 4:00 p.m. in the afternoon. (Radparvar Aff. Paragraph 7 & Exhibit C) (Plaintiff Dep. 24:15-19; 49:21-25.). Plaintiff signed timesheets indicating that he worked five (5) days a week, with weekends and holidays off. (Radparvar Aff. Paragraph 9 & Exhibit C).

In addition, Plaintiff lived for a year at 2770 Kingsbridge rent free. (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:10-12). He was not required to pay electricity on the rent-free apartment. (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:23). The estimated value of the apartment was $1,000 per month and the electricity was $50 per month. (Radparvar Aff. Paragraph 8). Plaintiff was given a company phone free of charge, with an estimated value of $50 per month. (Radparvar Aff. Paragraph 8).

---

[1] For a statement of the material facts, The Court is respectfully referred to Defendants' 56.1 Statement in Support of its Motion for Summary Judgment.

As part of Plaintiff's duties as a superintendant, he supervised porters, of which there were at least two (2). (Radparvar Aff. Paragraph 5) (Plaintiff Dep. 28:11-13; 29:18.). He made sure the porters finished their job requirements. (Plaintiff Dep. 28:14-16.). He reported to management the performance of the porters and made recommendations as to their status as employees of Defendants. (Radparvar Aff. Paragraph 5). Plaintiff routinely interfaced with Defendants' property manager, reporting on personnel and building matters, and engaged with tenants. (Radparvar Aff. Paragraph 5 and Exhibit A). In fact, he maintained his own office whereby he kept records and work orders. (Radparvar Aff. Paragraph 5) (Plaintiff Dep. 33:13-16). And, Plaintiff met with independent contractors that were hired to perform services at the Defendants' buildings, directing them to perform work. (Radparvar Aff. Paragraph 6).

Plaintiff could not recollect and did not count the hours or the time that he purportedly worked overtime for the Defendants. (Plaintiff Dep. 43:9-12; 43:16-17.). He could not articulate when he started working the 105 hours a week that he alleged in his complaint. (Plaintiff Dep. 44:15-20.). Plaintiff never wrote down the hours, kept records, or provided proof of his overtime to the Defendants. (Plaintiff Dep. 45:10-16; 47:7-17; 50:2-7.).

Plaintiff committed a series of disciplinary infractions, for which he admitted through his signature. (Radparvar Aff. Paragraph 11 & Exhibit E) (Plaintiff Dep. 60:21-23; 61:9-11). These infractions included lack of communication with managers, including not answering the company cell phone, failure to follow directives, insubordination, threats of violence towards managers, foul language towards managers and tenants, and threatening tenants to have his wife come over to their apartment and "beat them up."

3

(Radparvar Aff. Paragraph 12 & Exhibit E). The defendants terminated Plaintiff on January 2, 2009. (Radparvar Aff. Paragraph 13 & Exhibit F) (Plaintiff Dep. 62:1-3).

## ARGUMENT

### DEFENDANTS DID NOT VIOLATE THE FAIR LABOR STANDARDS ACT (FLSA) & NYS LABOR LAW

#### A. Standard of Review

Summary judgment must be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the initial burden of setting out the basis for its motion and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Id*. At 323. The burden then shifts to the nonmovant to produce evidence sufficient to create a genuine issue of material fact for tria. Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

#### B. Defendants did not violate the overtime provisions of the FLSA & NYS Labor Law

##### 1. Plaintiff did not make a prima facie case that he worked more than 40 hours per week

4

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). According to the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 US 680, 687 (1946) "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Courts have applied the *Anderson* standard to analyze claims under both FLSA and NYS Labor Law. See *Masco v. E & L Transp., Inc.* 387 F. Supp. 2d 87, 93-94 (S.D.N.Y. 2005).

In the present case, Plaintiff produced insufficient evidence that he worked overtime and could not even meet his initial burden. Plaintiff could not recollect and did not count the hours or the time that he purportedly worked overtime for the Defendants. (Plaintiff Dep. 43:9-12; 43:16-17.). See *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (To meet Plaintiff's burden, the Plaintiff should not "speculate"). He could not articulate when he started working the 105 hours a week that he alleged in his complaint. (Plaintiff Dep. 44:15-20.). And, Plaintiff never wrote down the hours, kept records, or provided proof of his overtime Defendants. (Plaintiff Dep. 45:10-16; 47:7-17; 50:2-7.).

Even were Plaintiff able to meet his initial burden, Defendant presented sufficient evidence that Plaintiff did not work overtime. Plaintiff signed timesheets indicating that he worked five (5) days a week, with weekends and holidays off. (Radparvar Aff. Paragraph 9 & Exhibit C). Additionally, Plaintiff testified he was required to work a "normal" job, five days a week, starting at 8:00 a.m. in the morning to 4:00 p.m. in the afternoon. (Plaintiff Dep. 24:15-19; 49:21-25.).

2. **Plaintiff was exempt from the provisions of the FLSA because Plaintiff was a "bona fide executive"**

Employers are exempt from the overtime requirement if the employee is "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). To qualify as an executive, the employee must be compensated on a salary basis at a rate not less than $455 per week. 29 C.F.R. § 541.1. The employee's primary duty must be managing the enterprise or managing a customarily recognized department or subdivision of the enterprise. The employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent and the employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. In addition, the employee must customarily and regularly exercise discretionary power. 29 C.F.R. § 541.1(a)-(e). *See also* 12 NYCRR § 142-2.14 (For purposes of exemptions from overtime provisions, New York State defines employee "exceptions" as opposed to "exemption" under the FLSA and follows an identical criteria to the FLSA in determining if an employee is employed as a "bona fide executive").

6

Plaintiff was an executive under the FLSA and NYS Labor Law. Plaintiff maintained is own office whereby he kept records and work orders. (Radparvar Aff. Paragraph 5) (Plaintiff Dep. 33:13-16). As part of his duties as a superintendant, he supervised at least two (2) porters. (Radparvar Aff. Paragraph 5) (Plaintiff Dep. 28:11-13; 29:18.). This included making sure porters finished their job requirements. (Plaintiff Dep. 28:14-16.). He reported to management the performance of the porters and made recommendations as to their status as employees of Defendant. (Radparvar Aff. Paragraph 5). And, Plaintiff routinely interfaced with Defendant's property manager, reporting on personnel and building matters, and interacted with tenants. (Radparvar Aff. Paragraph 5 and Exhibit A). He also met with independent contractors that were hired to perform services at the Defendant's buildings, directing them to perform work. (Radparvar Aff. Paragraph 6). Plaintiff was paid a salary of $500.00 per week. (Radparvar Aff. Paragraph 7 & Exhibit B). In fact, Plaintiff admitted when he was hired that he was paid a salary. (Plaintiff Dep. 23:13-17.).

## C. **Plaintiff was paid minimum wage**

Pursuant to the FLSA 29 U.S.C. § 206 the defendants were required to pay the Plaintiff of a minimum wage of $5.15 an hour. Pursuant to the New York Minimum Wage Act, New York Labor Law § 652 the defendants were required to pay Plaintiff minimum wages of $7.15 an hour.

It is clear from the documentary evidence that Plaintiff was paid at least minimum wage. In addition, Plaintiff offered no proof that he was not. Plaintiff was paid a salary of $500.00 per week, which averaged $12.50 per hour, more than the minimum wage. (Radparvar Aff. Paragraph 7 & Exhibit B). He was required to work a "normal"

job, five days a week, starting at 8:00 a.m. in the morning to 4:00 p.m. in the afternoon. (Radparvar Aff. Paragraph 7 & Exhibit C) (Plaintiff Dep. 24:15-19; 49:21-25.). Plaintiff signed timesheets indicating that he worked five (5) days a week, with weekends and holidays off. (Radparvar Aff. Paragraph 9 & Exhibit C).

Additionally, Plaintiff received a significant value by living rent-free in his apartment for at least one (1) year. (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:10-12). This value was estimated at $1,000 per month, a value in itself above the minimum wage. (Radparvar Aff. Paragraph 8). See Section 3(m) of the FLSA, 29 U.S.C. 203(m), which allows employers to include the reasonable costs of meals, lodging, or other facilities in employee wages for purposes of FLSA. In the present case, Defendants, did not include the "reasonable costs" of Plaintiff's apartment in calculating his wages. Rather, the Plaintiff was simply permitted to live in his apartment rent-free and collect a salary above the minimum wage.

Plaintiff was not required to pay electricity on the rent-free apartment, a value estimated at $50 per month. (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:23). Lastly, Plaintiff was given a company phone with an estimated value of $50 per month. (Radparvar Aff. Paragraph 8). Accordingly, Plaintiff's unpaid compensation, together with his salary, demonstrated that Plaintiff was paid more than minimum wage under both federal and state law.

**D. Defendants did not violate the spread of hours compensation provisions under New York Labor Law**

The "spread of hours" requirement is contained in a New York State regulation, 12 NYCRR § 142-2.4. It provides "an employee shall receive one hour's pay at the basic

8

minimum hourly wage rate, in addition to the minimum wage required . . . in any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." Id. "Spread of hours" is defined as the interval between the beginning and end of an employee's workday, and includes working time, plus time off for meals, plus intervals of off-duty time. (12 NYCRR § 142-2.18). Provided an employee's weekly wages exceed the total minimum wage, the employee will not be entitled to "spread of hours" pay. See *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048(GEL), 2006 WL 851749 and *Busgith v. Hudson News Co.*, 2008 NY Slip Op 31069(U) (N.Y. Sup. Ct. 4/8/2008), 2008 NY Slip Op 31069 (N.Y. Sup. Ct., 2008) (if an employee's total weekly compensation is equal to or greater than the total minimum wages due the employee for that workweek, including compensation for an additional hour for each day in which the "spread of hours" exceeds ten (10) hours, no additional payments are due the employee because the employee earns sufficiently more than the statutory minimum wage).

Again, it is clear from the documentary evidence that Plaintiff's weekly compensation was already sufficiently above the minimum rate. In addition, Plaintiff offered no proof that he was not. Plaintiff was paid a salary of $500.00 per week, which averaged $12.50 per hour, more than the minimum wage. (Radparvar Aff. Paragraph 7 & Exhibit B). He was required to work a "normal" job, five days a week, starting at 8:00 a.m. in the morning to 4:00 p.m. in the afternoon. (Radparvar Aff. Paragraph 7 & Exhibit C) (Plaintiff Dep. 24:15-19; 49:21-25.). Plaintiff signed timesheets indicating that he worked five (5) days a week, with weekends and holidays off. (Radparvar Aff. Paragraph 9 & Exhibit C).

And Plaintiff accrued other values during his employment for Defendants. Plaintiff received a significant value by living rent-free in his apartment for at least one (1) year. (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:10-12). This value was estimated at $1,000 per month. In addition, he was not required to pay electricity on the rent-free apartment, a value estimated at $50 per month. (Radparvar Aff. Paragraph 8) (Plaintiff Dep. 34:23). Lastly, Plaintiff was given a company phone with an estimated value of $50 per month. (Radparvar Aff. Paragraph 8).

Therefore, because Plaintiff's total weekly compensation was already sufficiently above the minimum wage, without even including other benefits he accrued as a Superintendant, he is not entitled to additional compensation under the spread of hours provisions.

## CONCLUSION

For the foregoing reasons, the Court should Defendants motion for summary judgment together with such other and further relief as the Court deems just and proper.

Dated: Ossining, NY
February 15, 2010

COTTO & ASSOCIATES
*Attorneys For Defendants*

By: _____

Mark J. Weinstein (MW1896)
70 Spring Street
Ossining, New York 10562
(914) 941-4077

10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**       **CASE NO. 09 CIV 6588**

## PEDRO CANELA-RODRIGUEZ, Plaintiff

**-against-**

## MILBANK REAL ESTATE, and FRIEDA RODRIGUEZ, Defendants

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Cotto & Associates
70 Spring Street
Ossining, New York 10562
Phone (914) 941-4077
Fax (914) 941-4082

**Attorneys for Defendants**

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February 2010, true and correct copies of the foregoing Defendants' Motion for Summary Judgment was filed electronically pursuant to ECF and a courtesy, hard- copy was served via Priority Mail at a US Post Office to the following address:

> Helen F. Dalton & Associates, PC
> Roman Avshalumov (RA5508)
> 69-12 Austin Street
> Forest Hills, NY 11375

Mark J. Weinstein